Debra L. Wabnik (dw-2468)
David R. Ehrlich (de-9786)
Stagg, Terenzi, Confusione & Wabnik, LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4500
dwabnik@stcwlaw.com
dehrlich@stcwlaw.com

*Attorneys for Plaintiff*
*Michelle Tulino*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MICHELLE TULINO,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF SMALL BUSINESS SERVICES,
NEW YORK CITY BUSINESS ASSISTANCE
CORPORATION, SHAAZAD ALI, ISMAIL
MOHAMED, ROBERT WALSH, ANDREW
SCHWARTZ, ANTHONY DELL'OLIO, SARAH
KRAUSS, GRETTA ARENAS, NARDA AMARILLA-
FERNANDEZ, BRYANA SHENTON, MYRNA MATEO,
PAT DAURIA and FRANK CARNESI,

                              Defendants.
------------------------------------------------------------------------X

Docket No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Michelle Tulino ("Plaintiff"), by her attorneys, Stagg, Terenzi, Confusione &

Wabnik, LLP, complaining of Defendants, The City of New York ("The City"), The New York

City Department of Small Business Services ("DSBS" or the "Agency"), New York City Business

Assistance Corporation ("NYBAC"), Shaazad Ali ("Ali"), Ismail Mohamed ("Mohamed"), Robert

Walsh ("Walsh"), Andrew Schwartz ("Schwartz"), Anthony Dell'Olio ("Dell'Olio"), Sarah Krauss

("Krauss"), Greta Arenas ("Arenas"), Narda Amarilla-Fernandez ("Amarilla-Fernandez"), Bryana

Shenton ("Shenton"), Myrna Mateo ("Mateo"), Pat Dauria ("Dauria") and Frank Carnesi ("Carnesi") (collectively "Defendants"), herein alleges as follows:

1.      Plaintiff worked for DSBS since 2008 as an Audit & Contract Manager, and later as both an Audit & Contract Manager for DSBS and Executive Director of NYBAC.

2.      In the years Plaintiff worked at DSBS and NYBAC, respectively, she was subjected to severe and pervasive sex discrimination, sexual harassment, retaliation, and wage discrimination, which forced her to resign, ending her promising career.

## JURISDICTION, VENUE AND PARTIES

3.      This is a civil action for monetary and compensatory damages for claims of sex discrimination, sexual harassment, hostile work environment, retaliation, violation of the Equal Pay Act, violation of the Fair Labor Standards Act ("FLSA"), violations of the New York Labor Laws, and violations of the New York City and State Civil Service Laws against all Defendants, as well as defamation, battery, assault and intentional infliction of emotional distress against Defendant Ali, and defamation against Defendants Arenas, Amarilla-Fernandez, Shenton, Mateo, Dauria and Carnesi ("Defamation Defendants.")

4.      This Court has jurisdiction over the action under 28 U.S.C. § 1331 and 29 U.S.C. § 206.

5.      Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over the New York State and City claims by way of supplemental jurisdiction

6.      At all relevant times, Plaintiff is a resident of Brooklyn, New York.

7.      At all relevant times, Defendant The City is a municipal entity that is a subdivision of the State of New York.

8.      At all relevant times, DSBS is a municipal agency with its principal place of business located at 110 Williams Street, New York, New York.

9.     At all relevant times, NYBAC is a not-for-profit corporation incorporated under Section 1411 of the New York Not-for-Profit Corporation Law, with its principal place of business located at 110 Williams Street, New York, New York.

10.     At all relevant times, Defendant Shaazad Ali was and is an individual employed by the City at DSBS as the Assistant Commissioner of Finance, and by NYBAC as the acting Treasurer.

11.     Ali maintains substantial authority in the decision and policy-making hierarchy of DSBS and NYBAC, and exercised supervisory responsibility and control over Plaintiff in both her functions as Contract & Audit Manager at DSBS, and as Executive Director of NYBAC.

12.     At all relevant times, Defendant Ismail Mohamed was and is an individual employed by the City at DSBS.  Mohamed exercised supervisory responsibility and control over Plaintiff during her employment as Contract & Audit Manager at DSBS.

13.     Defendant Robert Walsh was the Commissioner of DSBS during most of Plaintiff's tenure at DSBS, and exercised supervisory responsibility and control over Plaintiff and the entire Agency.

14.     At all relevant times, Defendant Andrew Schwartz was and is an individual employed by the City at DSBS as the Deputy Commissioner of Legal & Regulatory Affairs, charged with ensuring that the Agency follows relevant employment laws, and is currently the Acting Commissioner.

15.     At all relevant times, Defendant Anthony ("Tony") Dell'Olio was and is an individual employed by the City at DSBS as General Counsel.

16.     At all relevant times, Defendant Sarah Krauss was and is an individual employed by the City at DSBS as the Chief of Staff.

17.     At all relevant times, Defendant Gretta Arenas was and is an individual employed by the City at DSBS as an Accounts Payable Officer.

18.     At all relevant times, Defendant Narda Amarilla-Fernandez was and is an individual employed by the City at DSBS as Director of Budget.

19.     At all relevant times, Defendant Bryana Shenton was and is an individual employed by the City at DSBS as Accounts Payable Officer.

20.     At all relevant times, Defendant Myrna Mateo was and is an individual employed by the City at DSBS as Executive Director of Human Resources.

21.     Pat Dauria was an individual employed by the City at DSBS as Director of Budget during the majority of Plaintiff's tenure at DSBS, and later was hired as a consultant for a not-for-profit corporation affiliated with DSBS.

22.     At all relevant times, Frank Carnesi was an individual employed by the City at DSBS as Dock Master during the majority of Plaintiff's tenure at DSBS.

23.     All of Plaintiff's federal and state claims arose within New York County, New York, within the Southern Judicial District of New York.

24.     Accordingly, venue is proper in the Southern Judicial District of New York pursuant to Title 28 USC §§1391(b) and 1391(c), and this case should be assigned to the federal courthouse located in New York, New York.


**STATEMENT OF FACTS**

25.     Plaintiff, a smart and ambitious woman with a Masters in Public Finance, was hired by DSBS as a Contract & Audit Manager in 2008.

26. When Plaintiff began her employment, she learned and observed that DSBS's work environment and culture was rife with gender discrimination and sexual harassment. The executives, supervisors and employees at DSBS all participated in creating this environment.

27. For example, it was well known in the Agency and reported in the Village Voice that more than one female employee had sex with former Commissioner Walsh in exchange for employment opportunities and raises.

28. Defendant Ali, an older, married male with substantial authority in the Agency's decision and policy-making hierarchy and the Assistant Commissioner of DSBS, told Plaintiff at the start of her employment that younger female employees were required to have affairs with male Agency leaders if they wished to remain employed.

29. Ali discovered that Plaintiff was a religious person who did not engage in casual sex. Ali told Plaintiff that, in light of this sexist culture at the Agency, he would look after her and protect her from having to have sex with supervisors in order to advance at the Agency.

30. Ali advised Plaintiff that since it was not her style to have sex with any of the supervisors because she "had morals" she would have to work twice as hard to remain employed at the Agency and would be required to perform uncompensated pre-shift and post-shift work, including assuming duties outside of her official title. Ali explained that Plaintiff needed to perform this additional work so her co-workers would not assume she advanced in the Agency because of sexual favors, the norm at the Agency.

31. In a purported attempt to keep Plaintiff employed and avoid the ire of Agency staff, Ali continually directed Plaintiff to assume additional uncompensated work. Notwithstanding the above, Ali relayed on a daily basis to Plaintiff that male co-workers

discussed sexually explicit fantasies and engaged in a series of sexually derogatory and harassing behaviors directed at Plaintiff.

32.     In 2010, Defendant Ali informed Plaintiff that Defendant Frank Carnesi, who was under Ali's supervision, had called Plaintiff a "slut" and a "dick climber," and instructed the remainder of the unit's employees to refuse Plaintiff's work requests and to "stay away" from her because Plaintiff allegedly reminded him of a previous employee who had sex with Commissioner Walsh in exchange for raises "and then refused to get an abortion unless he [Commissioner Walsh] paid her out." Ali told Plaintiff that Carnesi was a good friend of his and "for some reason" continued to insist that Plaintiff was compensated for "reasons other than work."

33.     Shortly thereafter other employees under Ali's supervision, including the Defamation Defendants, also began calling Plaintiff a "whore" and insisting that she had sex with her supervisors in order to remain employed at the Agency.

34.     Plaintiff asked Ali, who knew these allegations were false, to take remedial action against the employees, including the Defamation Defendants. Instead, Ali used this incident to control Plaintiff. Ali directed Plaintiff not to speak to other male employees in order to not "give off the wrong message." Ali told Plaintiff that the Agency employees had to be "absolutely convinced" that Plaintiff's salary was not the result of sexual favors, and that the "only way" the Agency could offer Plaintiff a salary commensurate to her work was if Plaintiff performed the work of three people.

35.     In addition to Plaintiff's official job responsibility as Contract & Audit Manager for DSBS, Ali required Plaintiff to perform out-of-title and uncompensated work as both a Reimbursement Officer and a Council Discretionary Liaison for the Agency. As Reimbursement

Officer, Plaintiff was tasked with tracking and distributing the Agency's cash funds directly to employees.

36.     As NYC Council Liaison for DSBS discretionary contracts, Plaintiff was responsible for working directly with Council Finance members on budget issues and performed the role of compliance manager to ensure that funds allocated to DSBS were properly used and within DSBS's purview.

37.     In 2012, in addition to Plaintiff's Audit & Contract Manager duties and other out-of-title duties, Ali gave Plaintiff the responsibility of running NYBAC, which collects and processes grants for small businesses.  NYBAC was housed at the same address as DSBS.

38.     In 2013, Ali informed Plaintiff that a significantly less qualified male employee had been granted a $21,000 raise for the substantially similar work performed by Plaintiff and explained that "in this Agency female employees are required to do extra work and get Master's degrees while men are not."

39.     In February 2013, Ali informed Plaintiff that Defamation Defendants approached both Ali and Mohamed demanding that Plaintiff's salary be decreased.  At about the same time, Ali also advised Plaintiff that Andrew Schwartz had directed Ali to deny Plaintiff a raise because Schwartz had already issued a substantial raise to a less qualified male employee.

40.     On March 7, 2013, Ali informed Plaintiff that co-workers in the unit, including the Defamation Defendants, "ganged up" against her and filed a complaint with the Agency's internal EEO office for issuing Plaintiff compensation based on 'favoritism' and alleged sexual favors.  Ali told Plaintiff that her co-workers asserted that Plaintiff's 6 years at DSBS was not sufficient to justify her earning the salary she was receiving.

41.     The Agency's EEO Office commenced an investigation into the complaints made by Plaintiff's co-workers.  Ali informed Plaintiff that he was able to get the investigation closed by pointing out that a 26-year old male employee, with far less work experience than Plaintiff, had been promoted to a position as Assistant Commissioner—a position that paid more than Plaintiff's position-- in less than 6 months.

42.     Ali then told Plaintiff that to get the EEO office to close the investigation, he promised the Defamation Defendants that Plaintiff's salary was only "temporary" and that he would soon take "her salary down."  On July 10, 2013, the head of Human Resources, Myrna Mateo, a close acquaintance of Defamation Defendants, requested that Plaintiff's salary be decreased.

43.     Plaintiff's co-workers at the Agency, including the Defamation Defendants, continued to abuse, harass and bully Plaintiff even after the EEO office closed the investigation. Those co-workers constantly made statements that Plaintiff was "a slut paid with city money," insinuating that she received raises and additional assignments in exchange for sex with supervisors.

44.     In 2014, Ali formally gave Plaintiff the title of Executive Director of NYBAC, and continued to perform the duties of the Executive Director and bookkeeper of NYBAC in addition to her regular duties as Audit & Contract Manager, and the out-of-title work as Reimbursement Officer and Council Discretionary Liaison.

45.     Plaintiff was not paid for the work she performed at NYBAC, even after being formally named Executive Director.  Ali claimed he assigned her this entirely separate and additional position as Executive Director to justify the $5,000 raise she received for performing other out-of-title duties as Reimbursement Officer and Council Discretionary Liaison.

46.     Ali told Plaintiff that he needed to continually assign her additional out-of-title duties and could not grant her a salary equal to the work she performed because both Commissioner Walsh and Ali "were caught in a bad position" where other employees would accuse them of favoritism for compensating Plaintiff for work performed without having had sex with a supervisor.  Ali further relayed to Plaintiff that a male employee had recently been given a substantial raise for performing work as an Executive Director of a not-for-profit corporation affiliated with DSBS.  As a result, Ali told Plaintiff that she could not hope to be compensated for her duties as Executive Director of NYBAC at that time.

47.     Nevertheless, other employees, including the Defamation Defendants, bullied Plaintiff and called her a "whore" because she was given additional assignments.  The employees told her that she only received the additional assignment because she had an affair with Ali, an absolute falsehood.  The employees believed this fabrication because, unbeknownst to Plaintiff at the time, Ali often insinuated that he was having an affair with Plaintiff.

48.     Plaintiff complained again to Ali about the sexist conduct and bullying by the other employees, and such conduct was observed by Commissioner Walsh.  Commissioner Walsh acknowledged that Ali should have corrected the situation, but never did.  Although the Commissioner acknowledged the harassment of certain employees against Plaintiff, he took no actions to remediate it.

49.     During Plaintiff's tenure at DSBS, besides dong the out-of-title duties as Reimbursement Officer and Council Discretionary Liaison, and being assigned to the position of Executive Director of NYBAC without compensation, she was forced to perform other post-shift duties, such as making videos to promote the Agency, and for the Commissioner Walsh's personal use.

50.     Ali told Plaintiff that if she declined to perform the video assignments, which she did without additional compensation, she would be put on Defendant Walsh's "shit list" of employees to be discharged.

51.     In 2014, there was a change in the Agency's administration and Ali was given a position with less power and authority.  This loss of power resulted in Ali attempting to exert more control over Plaintiff after which Ali became more aggressive and jealous of Plaintiff's interactions with other employees.

52.     Ali began persistently contacting Plaintiff by phone and e-mail, including after working hours.  Ali demanded that Plaintiff disclose her Facebook password to him so that he could see what she was doing during personal time.  When Plaintiff avoided Ali's requests, he became increasingly agitated and more persistent and sought to find alternate ways to control Plaintiff.

53.     On one of many such occasions, Ali invited to pick Plaintiff up at her home over the weekend to take her shopping and to dinner, and demanded that Plaintiff take "special pictures" of herself for him. Ali told Plaintiff that he had obtained her home address and birthdate from Human Resources and had changed all his personal passwords to her date of birth and often passed by her house at night.

54.     On or about September 18, 2014, angered by Plaintiff's constant rejection of his sexual advances, Ali's actions toward Plaintiff turned violent.  On this occasion, when plaintiff received bad news about her sick father in the hospital, she was walking to the bathroom crying and Ali cornered her and aggressively pinned her against a wall.  He grabbed and forced himself upon Plaintiff and attempted to kiss her.  Plaintiff struggled against Ali's grip for minutes before she was able to push his body away from hers and break free.

55.     At that time, Plaintiff was still dealing with the sexist comments and bullying from other employees, including the Defamation Defendants.  In October 2014, Ali confronted Amarilla-Fernandez, who called Plaintiff a "whore," and told her that she should not be upset over Plaintiff's additional assignment and $5,000 raise.  Ali told Amarilla-Fernandez that he would have had to hire an employee for $50,000 if Plaintiff did not perform the Executive Director position for NYBAC.

56.     During this period, Plaintiff attempted to avoid Defendant Ali other than for specific business-related matters.  When she did not stop by his office to spend "personal time" with him, Ali aggressively ridiculed her, insinuating that if she continued to reject his advances she would be "burning a bridge" after which she would find her position terminated.

57.     Shortly thereafter Plaintiff's father passed away, and Plaintiff engaged in a conversation with another male employee about her loss.  Ali observed this conversation and went into a jealous rage.

58.     Ali called Plaintiff into his office, told her that she should not be talking to other men, and informed Plaintiff that such conduct is what caused the other employees to believe that she is a "whore" and having sex with male supervisors to advance at the Agency.

59.     After Ali's conversation with Plaintiff, he would not speak to her and began to take steps to hire a replacement for her.

60.     Because of Ali's conduct and the abuse from the other employees at the Agency, Plaintiff informed Ali that she was planning to file a complaint with the Agency's internal EEO office.

61.     Plaintiff's statement to Ali caused him to behave in a disturbing fashion.  Ali told Plaintiff, "I should have left you where you were" and began slapping himself, stating "I'm so

stupid, I'm so stupid." Plaintiff told Ali that "he was scaring her," but Ali continued slapping and berating himself for being "stupid enough" to think that she would "repay him for his help."

62.    Plaintiff, fearing for her safety when witnessing Ali's disturbing conduct, left his office. Ali then followed Plaintiff to her cube, lunged at her and again tried to physically impose himself on her.

63.    Once Plaintiff made it clear to Defendant Ali that she would not tolerate his outrageous conduct, Ali and the other employees increased the intensity of their abuse, and engaged in a concerted and systematic effort to destroy Plaintiff's reputation and to drive Plaintiff from her position.

64.    No less than two days after the incident of Ali slapping himself, Ali told Plaintiff that she was receiving her "two-weeks notice." Ali sent Plaintiff an e-mail asking her to return her Agency-issued blackberry. Ali then proceeded to have her removed from her cubicle and barred her from having access to her files. Plaintiff was then demoted, as her key responsibilities as Audit & Contract Manager and Executive Director of NYBAC were taken away.

65.    Fueled by Ali's misstatements, co-workers, including the Defamation Defendants, filed formal complaints to the Department of Investigation ("DOI"), a law enforcement agency solely tasked with combating corruption within public institutions, falsely claiming that Plaintiff received benefits for performing sexual favors and stole City money. After a full investigation was conducted by the DOI, the complaint against Plaintiff was dismissed as a baseless complaint filed by "malicious coworkers."

66.    At that time, Plaintiff was no longer working under Ali, but placed under an employee named Ismail Mohamed, who reported to Ali. Mohamed was not comfortable having

Plaintiff under him because he knew of the rift between Ali and Plaintiff, and believed he could not supervise Plaintiff.

67.    Shortly after being advised that Plaintiff had initiated an EEO investigation, Mohamed called Plaintiff into his office to tell her that he was uncomfortable with "snitches," and that in a decision between whether Ali or Plaintiff had to be discharged, "they all knew" it was Plaintiff "who would be fired."

68.    Plaintiff approached the Chief of Staff Krauss to ask that she be assigned another supervisor other than Mohamed, since Mohamed had notified Plaintiff that, in light of his support of Ali, he could not fairly and unbiasedly act as her supervisor.  Krauss told her there was no one else who could supervise her "since the entire Agency engaged in sexual discrimination." Krauss then laughed and began to ridicule Plaintiff saying that, as a lesbian, she was the only woman in the Agency who could expect not to have to sleep with male supervisors to get promoted.

69.    At this point, virtually all of Plaintiff's responsibilities and duties were taken away from her.

70.    Plaintiff was no longer invited to meetings which she used to previously run, her duties were stripped, access to Quickbooks was restricted (which did not enable her to perform her previous duties as Audit Manager) and sick and "comp" time requests were not approved. Mohamed, who continued to act as Plaintiff's supervisor, directed her to no longer communicate with him because he was concerned about being trapped into making incriminating admissions about his discriminatory conduct.

71.    Plaintiff told the EEO Director of witnesses who could confirm the sexual harassment and overt sexist environment at the Agency.  However, those witnesses were

threatened by other employees and supervisors, and were never interviewed  The EEO Director also met with Ali privately, and upon information and belief, assisted him in evading the complaint process.  Ali and the EEO Director then coordinated the witness testimony.

72.    At a December 2014 meeting with the EEO Director, which was attended by both Plaintiff and her sister, the EEO Director admitted that promotions were based on having sex with the Agency supervisors.  The EEO Director referred to the known situation in which former Commissioner Walsh had sex with the female employees and stated that even though he left, all of the same people remained and are in charge.  The EEO Director stated, "That is the way it is." Plaintiff and her sister were shocked at this frank admission.

73.    Ali forwarded the EEO complaints made by other employees to Plaintiff and called the internal EEO office at the DSBS a "joke," and informed Plaintiff that Dell'Olio, who worked in conjunction with the EEO office, had gotten his position because of Ali.

74.    In March 2015, during a meeting with the EEO office, Dell'Olio represented himself to Plaintiff as counsel for the Agency, and began to pressure Plaintiff to sign a document releasing the Agency from liability.  In doing so, Dell'Olio aggressively refused Plaintiff's repeated requests to read the contents of the document.  Plaintiff refused to sign the document.

75.    After months of waiting, in June 2015 the EEO office concluded that Plaintiff's claims of sex harassment, sex discrimination and retaliation were inconclusive.

76.    Shortly thereafter, General Counsel Andrew Schwartz told Plaintiff that her "complaint created a divide and the Agency cannot function that way," and that she "did not belong."

77.    Based on the sex discrimination, sexual harassment and retaliation, Plaintiff being stripped of all of her job duties and ostracized at the Agency, the EEO's failure to recognize and

correct the problem, and Schwartz's claim that Plaintiff caused the rift at the Agency and did not belong, Plaintiff could no longer bear working there.

78.     As a result, Plaintiff was constructively discharged and forced to resign her employment with DSBS.

79.     Upon information and belief, Ali and several other employees rejoiced at Plaintiff's resignation, stating that they achieved their goal of getting Plaintiff out of the Agency.

80.     The conduct by DSBS, NYBAC, Ali, Mohamed, Walsh, Schwartz, Dell'Olio, Krauss, Arenas, Amarilla-Fernandez, Shenton, Dauria, Mateo and Carnesi caused and continues to cause Plaintiff severe emotional distress, anxiety, panic attacks, humiliation, and lost compensation and benefits.  Her career at the DSBS, the perfect job for Plaintiff's skills and education, was destroyed.

### AS A FIRST CAUSE OF ACTION AGAINST DSBS, THE CITY AND NYBAC
### (Violation of the Equal Pay Act)

81.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

82.     Plaintiff's rights against gender discrimination under the Equal Pay Act, specifically 28 U.S.C. § 206(d), have been unlawfully denied by the actions of the Defendants.

83.     During her employment, Defendants required Plaintiff to perform the same or substantially the same job position as other male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment and paid Plaintiff at a rate of pay, including salary and bonus, less than such male employees and/or what other male employees would have been paid for in that position.

84.     While acting as Contract & Audit Manager, Plaintiff had to assume three other wholly distinct positions and was compensated less than male employees working only as Contract & Audit Managers.

85.     The male employees at other New York City agencies, who held the title equivalent to Contract & Audit Manager, received greater compensation than Plaintiff.

86.     In order to receive a "raise", Plaintiff had to assume additional job functions outside of the Agency, i.e., the position of Executive Director of NYBAC.    Male employees received adequate compensation without having to undertake any additional work at all.

87.     The male employees at DSBS, who also had a position at a not-for-profit entity related to DSBS, received compensation from the not-for-profit entity for performing the duties of this other job, whereas Plaintiff did not.

88.     The differential rate of pay, failure to give Plaintiff raises without having to perform additional jobs, and the failure to pay Plaintiff for her work as Executive Director of NYBAC, was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

89.     Defendants are engaged in policies and practices of employment which willfully discriminated against Plaintiff on the basis of gender by paying her a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

90.     In addition, Defendants have implemented and maintained policies and practices that have a disparate discriminatory impact on the compensation paid to its female employees, including Plaintiff.

91.     By the actions described above, among others, Defendants have violated the Equal Pay Act, 29 U.S.C. § 206.

92.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

93.     Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## AS A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Discrimination in Violation of New York Executive Law § 296(1))

94.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

95.     Executive Law § 296 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee because of her sex.

96.     The conduct of Defendants, as alleged above, constitutes sexual harassment and sex discrimination in violation of Executive Law §296 by, among other things, creating a hostile work environment for  Plaintiff and discriminating against Plaintiff based on her sex.

97.     Plaintiff was constructively discharged because of the unlawful sexual harassment and discrimination.

98.     As a result of the above, Plaintiff has been and continues to be damaged, including lost compensation and benefits, and emotional distress and humiliation.

## AS A THIRD CAUSE OF ACTION AGAINST ALI,
### MOHAMED, WALSH, SCHWARTZ, DELL'OLIO, KRAUSS, ARENAS, AMARILLA-FERENANDEZ, SHENTON, MATEO, DAURIA AND CARNESI
### (Discrimination in Violation of Executive Law § 296(6))

99.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

100.    New York State Executive Law § 296(6) states that it is prohibited for employees to aid, abet, incite, compel or coerce an unlawful discriminatory practice.

101.    Defendants Ali, Mohamed, Walsh, Schwartz, Dell'Olio, Krauss, Arenas, Amarilla-Fernandez, Shenton, Mateo, Dauria and Carnesi engaged in unlawful discriminatory practices and conduct in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory, unlawful and retaliatory conduct outlined above.

102.    As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.

### AS A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Quid Pro Quo Sexual Harassment in Violation of New York Executive Law § 296)

103.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

104.    As discussed in the foregoing paragraphs, Plaintiff was demoted as a direct result of refusing the advances of Defendant Ali and for reporting his egregious actions to the Agency's internal EEO Office.

105.    Plaintiff was ultimately forced to resign from her job because she could not tolerate Ali's outrageous behavior.

106.    Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296 by engaging in quid pro quo sexual harassment.

107.    As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.

## AS A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Retaliation in Violation of New York Executive Law § 296(7))

108.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

109.   New York State Executive Law § 296(7) states that it is unlawful to retaliate or discriminate against an employee who opposes or complains about a discriminatory practice forbidden under that law.

110.   Plaintiff complained about the sexual harassment and discrimination at DSBS, including the formal submission of a complaint to the Agency's internal EEO Office.

111.   Because of Plaintiff's complaint, Defendants engaged in unlawful retaliation by demoting her, stripping her of her duties and responsibilities, ostracizing her, and creating an abusive environment that gave her no choice but to resign her employment

112.   As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.

## AS A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Discrimination in Violation of the New York City Administrative Code 8-107(1))

113.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

114.   The Administrative Code of City of NY § 8-107 (l) states that it is unlawful for an employer to discriminate on the basis of gender.

115.   Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(l)(a) by creating and maintaining a hostile work environment based on Plaintiff's gender, and otherwise discriminating against her because of her gender.

116.    Defendants engaged in unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by demoting and ostracizing Plaintiff because she refused Ali's advances, and creating a hostile work environment based on her gender, which provided her with no choice but to resign her employment.

117.    As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation, and Plaintiff is also entitled to attorney's fees and costs.

118.    Because Defendants' actions were willful and egregious, Plaintiff is also entitled to punitive damages.

### AS A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Retaliation in Violation of New York City Administrative Code 8-107(1)(e))

119.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

120.    The New York City Administrative Code Title 8, § 8-107(l)(e) provides that it is unlawful to retaliate or discriminate against an employee who opposes any practice forbidden by that section of the law.

121.    Plaintiff complained to DSBS about hostile work environment and discrimination based on gender, and formally submitted a complaint to the EEO Office.

122.    Because Plaintiff complained about the sexual harassment and discrimination, Defendants retaliated and discriminated against Plaintiff in violation of New York City Administrative Code Title 8, § 8-107(l)(e).

123.    As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.

124.     Because Defendants' conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is entitled to punitive damages and attorney's fees and costs.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST ALI, MOHAMED, WALSH, SCHWARTZ, DELL'OLIO, KRAUSS, ARENAS, AMARILLA-FERNANDEZ, SHENTON, MATEO, DAURIA AND CARNESI**
**(Discrimination in Violation of New York City Administrative Code 8-107(6))**

125.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

126.     The New York City Administrative Code § 8-107(6) prohibits employees from aiding, abetting, inciting, compelling or coercing any unlawful discrimination or retaliation.

127.     Defendants Ali, Mohamed, Walsh, Schwartz, Dell'Olio, Krauss, Arenas, Amarilla-Fernandez, Shenton, Mateo, Dauria and Carnesi engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the discriminatory, unlawful and retaliatory conduct outlined above.

128.     As a result of the above, Plaintiff has been damaged, including lost compensation and benefits, and emotional distress and humiliation.  Because Defendants' conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is entitled to punitive damages and attorney's fees and costs.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST SHAAZAD ALI**
**(Battery)**

129.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

130.     On or about September 18, 2014, Ali intentionally groped Plaintiff, and intentionally tried to forcibly hug and kiss her.

131.    Plaintiff had to physically struggle to push Ali away for several minutes before managing to escape his hold of her.

132.    Ali aggressively grabbed and tried to hug and kiss Plaintiff on other occasions in November 2014.

133.    Ali's physical touching of Plaintiff was intentional, unwelcomed and offensive.

134.    Ali's groping and forcing himself on Plaintiff resulted in physical pain and extreme emotional distress and humiliation, for which Plaintiff is entitled to an award of damages, including punitive damages.

## AS AND FOR AN TENTH CAUSE OF ACTION AGAINST SHAAZAD ALI
### (Assault)

135.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

136.    On or about September 18, 2014, Ali groped Plaintiff, and tried to forcibly hug and kiss her.

137.    Plaintiff had to physically push Ali away to escape his hold of her.

138.    Ali aggressively grabbed and tried to hug and kiss Plaintiff on other occasions in November 2014.

139.    Ali's physical touching of Plaintiff was intentional, unwelcomed and offensive.

140.    Ali's physical conduct of groping Plaintiff and forcing himself on Plaintiff placed her in imminent apprehension of harmful conduct.

141.    Ali's actions as described above resulted in physical pain and extreme emotional distress and humiliation, for which Plaintiff is entitled to an award of damages, including punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST SHAAZAD ALI
### (Intentional Infliction of Emotional Distress)

142.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

143.    On or about September 18, 2014, Ali groped Plaintiff, and tried to forcibly hug and kiss her.

144.    Plaintiff had to physically push Ali away to escape his hold of her.

145.    Ali aggressively grabbed and tried to hug and kiss Plaintiff on another occasion in November 2014.

146.    Ali's physical touching of Plaintiff was intentional, unwelcomed and offensive.

147.    After Ali's assault and battery of Plaintiff, and Plaintiff having to endure the sexual harassment from her colleagues, she informed Ali that she was going to file a complaint with the Agency's internal EEO office.

148.    As a result of her informing Ali about filing the EEO Complaint, Ali charted a course of destroying Plaintiff's career.

149.    In retaliation for her filing an EEO complaint, he discharged Plaintiff from all key job duties, demoted her, and isolated her within the Agency.

150.    Ali's conduct was extreme and outrageous, and should not be tolerated in a civil society.

151.    Ali intentionally engaged in the above conduct to cause Plaintiff severe emotional distress, or at the very least, engaged in such conduct in utter disregard that it would cause Plaintiff severe emotional distress.

152.    As a result of Ali's conduct, and because of his conduct, Plaintiff suffered from extreme emotional distress, humiliation and embarrassment, for which Plaintiff is entitled to an award of damages, including punitive damages.

**AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST ALI, ARENAS, AMARILLA-FERNANDEZ, SHENTON, MATEO, DAURIA and CARNESI**
**(Defamation)**

153.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

154.    The Defamation Defendants ganged up on Plaintiff and constantly called her a "whore" and stated that she received raises and additional assignments because she had sex with supervisors.

155.    The Defamation Defendants specifically stated to Ali, Plaintiff and other employees that Plaintiff was "paid for sex on the City's dime."  That statement was repeated over and over throughout Plaintiff's tenure at the Agency.

156.    The Defamation Defendants filed a false complaint with the EEO office, claiming that Plaintiff received raises and work benefits for having sex with supervisors.

157.    The Defamation Defendants stated to Ali, themselves and other co-workers that Plaintiff "received diamond bracelets for having sex with supervisors."

158.    The Defamation Defendants made a false complaint to the criminal investigation unit, claiming that Plaintiff stole City money.

159.    All of the defamatory statements made by the Defamation Defendants related directly to Plaintiff's career and integrity in her employment, and is defamation per se.

160.    As a result of the defamatory comments, Plaintiff suffered damage to her reputation and career.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Violation of the State Civil Service Law)

161.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

162.    The New York State Civil Service Law Section 61(2) prohibits an employee from performing out-of-title work without appointment to the title, grade and salary of such higher or different position.

163.    Plaintiff worked as an Audit & Contract Manager for DSBS, but was also appointed as the Executive Director of NYBAC.

164.    Plaintiff's work as the Executive Director of DSBS was out-of-title as it related to her title as Audit & Contract Manager.

165.    Plaintiff was not compensated for the work she performed as the Executive Director.

166.    Plaintiff also performed additional assignments that were out-of-title as it related to her title of Audit & Contract Manager by forcing her to assume positions as Reimbursement Officer and Council Discretionary Liaison, and prepare marketing videos for the Agency and for Commissioner Walsh's personal use.

167.    Plaintiff worked several hours per week performing tasks and responsibilities as Council Discretionary Liaison for DSBS.

168.    Plaintiff worked several hours per week performing tasks and responsibilities as Reimbursement Officer for DSBS.

169.    Plaintiff was not compensated for the out-of-title work she performed as Reimbursement Officer and Council Discretionary Liaison.

170.    The actions by Defendants violated New York Civil Service Law Section 61, and Plaintiff was damaged by not receiving compensation for her out-of-title work.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST DEFENDANTS
#### (Violation of the New York City Civil Service Rules and Regulations)

171.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

172.    The New York City Civil Service Rules and Regulations Section 5.1.1 prohibit an employee from performing out-of-title work without appointment to the title, grade and salary of such higher or different position.

173.    Plaintiff worked as both an Audit & Contract Manager for DSBS, but was also appointed as the Executive Director of NYBAC.

174.    Plaintiff's work as the Executive Director for NYBAC was out-of-title as it related to her title as Audit & Contract Manager.

175.    Plaintiff was not compensated for the work she performed as the Executive Director for NYBAC.

176.    Plaintiff also performed additional assignments that were out-of-title as it related to her title of Audit & Contract Manager by forcing her to assume positions as Reimbursement Officer and Council Discretionary Liaison, and prepare marketing videos for the Agency and for the Commissioner's personal use.

177.    Plaintiff worked several hours per week performing tasks and responsibilities as Council Discretionary Liaison for DSBS.

178.    Plaintiff worked several hours per week performing tasks and responsibilities as Reimbursement Officer for DSBS.

179.   Plaintiff was not compensated for the out-of-title work she performed as Reimbursement Officer and Council Discretionary Liaison.

180.   The actions by Defendants violated New York City Civil Service Rules & Regulations Section 5.1.1, and Plaintiff was damaged by not receiving compensation for her out-of-title work.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST NYBAC
### (Violation of the Fair Labor Standards Act)

181.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

182.   Plaintiff performed the duties of Executive Director of NYBAC since 2012, and was formally given the title of Executive Director in 2014.

183.   As the de facto and formal Executive Director, she was responsible in whole or part for all activities and decisions made by NYBAC.

184.   Plaintiff worked approximately 25 hours per week performing tasks and responsibilities for NYBAC, in addition to working approximately 35 hours per week performing tasks and responsibilities as Audit & Contract Manager for DSBS.

185.   Plaintiff did not receive any compensation for the work she performed for NYBAC.

186.   NYBAC's failure to compensate Plaintiff for her work as Executive Director violated 29 U.S.C. § 206—the Fair Labor Standards Act.

187.   Plaintiff was damaged by this violation, including lost compensation.  Because NYBAC's failure to compensate Plaintiff was willful, she is also entitled to liquidated damages, punitive damages and attorney's fees and costs.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST NYBAC
### (Violation of the New York State Minimum Wage Act)

188.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

189.    Plaintiff performed the duties of Executive Director of NYBAC since 2012, and was formally given the title of Executive Director in 2014.

190.    Plaintiff worked approximately 25 hours per week performing tasks and responsibilities for NYBAC, along with working approximately 35 hours per week performing tasks and responsibilities as Audit & Contract Manager for DSBS.

191.    As the Executive Director she was responsible in whole or part for all activities and decisions made by NYBAC.

192.    Plaintiff did not receive any compensation for the work she performed for NYBAC.

193.    NYBAC's failure to compensate Plaintiff for her work at NYBAC violated New York Labor Law Section 650, et seq.—the New York Minimum Wage Act.

194.    Plaintiff was damaged by this violation, including lost compensation.  Because NYBAC's failure to compensate Plaintiff was willful, she is also entitled to liquidated damages, punitive damages and attorney's fees and costs.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that the Defendants engaged in unlawful employment practice prohibited by the Equal Pay Act, the New York State Executive Law §296 et. seq. and the New York City Administrative Code Title 8, §8-107 et. seq.; and that Defendants harassed,

discriminated against Plaintiff on the basis of her sex and retaliated against her for making complaints of discrimination, all resulting in her constructive discharge;

B.     Declaring that Defendants engaged in conduct violative of the New York City and State Civil Service Laws, the Fair Labor Standards Act, and the New York Minimum Wage Act by forcing her to perform duties as the Executive Director of NYBAC, and other out-of-title work, without any compensation;

C.     Declaring that Defendants Ali, Mohamed, Walsh, Schwartz, Dell'Olio, Krauss, Arenas, Amarilla-Fernandez, Shenton, Mateo, Dauria and Carnesi aided and abetted the discrimination and retaliation of DSBS;

D.     Declaring that Defendant Ali engaged in battery, assault and intentional infliction of emotional distress against Plaintiff;

E.     Declaring that the Defamation Defendants engaged in per se defamation of Plaintiff, damaging her career and reputation;

F.     Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices, unequal and discriminatory payment practices, and constructive discharge of Plaintiff;

G.     Awarding damages to Plaintiff for lost compensation and wages resulting from performing the job of Executive Director of NYBAC without any compensation, and performing out-of-title duties and jobs without compensation;

H.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering, humiliation, embarrassment, and injury to her reputation in an amount to be determined at trial;

I.     Awarding Plaintiff punitive damages;

J.  Awarding Plaintiff attorney's fees, costs, and expenses; and

K.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  Garden City, New York
        September 9, 2015

Stagg, Terenzi, Confusione & Wabnik, LLP


By:  /s/Debra L. Wabnik
     Debra L. Wabnik (dw-2468)
     David R. Ehrlich (de-9786)
     *Attorneys for Plaintiff*
     *Michelle Tulino*
     401 Franklin Avenue, Suite 300
     Garden City, New York 11530
     (516) 812-4500


TO:  The City of New York
     100 Church Street
     New York, New York 10007

     The New York City
     Department of Small Business Services
     110 Williams Street
     New York, New York 10038

     New York City Business Assistance Corporation
     110 Williams Street
     New York, New York 10038

     Shaazad Ali
     110 Williams Street
     New York, New York 10038

     Ismail Mohamed
     110 Williams Street
     New York, New York 10038

     Robert Walsh
     110 Williams Street
     New York, New York 10038

Andrew Schwartz
110 Williams Street
New York, New York 10038

Sarah Krauss
110 Williams Street
New York, New York 10038

Anthony Dell'Olio
110 Williams Street
New York, New York 10038

Gretta Arenas
110 Williams Street
New York, New York 10038

Narda Amarilla-Fernandez
110 Williams Street
New York, New York 10038

Bryana Shenton
110 Williams Street
New York, New York 10038

Myrna Mateo
110 Williams Street
New York, New York 10038

Pat Dauria
110 Williams Street
New York, New York 10038

Frank Carnesi
110 Williams Street
New York, New York 10038