```
MIHUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
MICHELLE TULINO,                                    :
                                                    :
                              Plaintiff,            :       15-CV-7106 (JMF)
                                                    :
              -v-                                   :       OPINION AND ORDER
                                                    :
THE CITY OF NEW YORK, et al.,                       :
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/19/2016
```

JESSE M. FURMAN, United States District Judge:

      Plaintiff Michelle Tulino worked for the New York City Department of Small Business Services ("SBS") from 2008 to June 2015.  In this action, she alleges that she was subjected to gender discrimination, sexual harassment, a hostile work environment, retaliation, and wage discrimination throughout her time at SBS, ultimately resulting in her constructive discharge in 2015.  In addition to bringing claims against the City of New York, SBS, and the New York City Business Assistance Corporation ("NYBAC"), Plaintiff brings claims against her former supervisor, Shaazad Ali, and former coworkers Greta Arenas, Narda Amarilla-Fernandez, Bryana Shenton, Myrna Mateo, Pat Dauria, and Frank Carnesi (together, the "Defamation Defendants").  Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss most — but not all — of Plaintiff's claims.  For the reasons discussed below, their motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following facts are taken from the Amended Complaint ("Complaint") and are assumed to be true.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d

Cir. 2009). Plaintiff was hired by the City to work at SBS in 2008. (Am. Compl. (Docket No. 62) ¶ 1). According to the Complaint, SBS "created and perpetuated a culture that essentially required female employees to perform sexual favors or engage in sexualized conduct to advance their careers" throughout her employment. (*See id.* ¶¶ 28, 32). Because Plaintiff refused to participate in that sexualized culture, she was immediately derided as "frigid" and was "stonewalled from participating" in various functions of her position. (*Id.* ¶¶ 34-35). Plaintiff's supervisors, including Ali, told her that she would be required to work "twice as hard to remain employed" because she was a woman and refused to participate in SBS's sexualized culture. (*See id.* ¶ 39). Beginning at some time in 2010, Ali informed Plaintiff that Defendant Carnesi "had called" her "a 'slut' and a 'dick climber,' and instructed the remainder of the unit's employees to refuse Plaintiff's work requests" because she reminded Carnesi of a "previous employee who [had] had sex with [a supervisor] in exchange for raises." (*Id.* ¶ 41). Shortly thereafter, other employees under Ali's supervision, including the other Defamation Defendants, began making similar comments about Plaintiff. (*Id.* ¶ 42).

In 2012, Plaintiff was given additional responsibilities, including the task of running NYBAC, a not-for-profit entity that collects and processes grants for small businesses. (*Id.* ¶ 47). NYBAC is "housed at the same address" as SBS, but — according to the Complaint at least — it "is a separate and distinct entity." (*Id.*). In 2014, Plaintiff was named Executive Director of NYBAC. (*Id.* ¶ 52). In response to Plaintiff's career advancements, her coworkers, including the Defamation Defendants, ganged up on her and filed a complaint with SBS's internal Equal Employment Opportunity ("EEO") office claiming that Plaintiff was receiving favorable treatment in exchange for sexual favors. (*Id.* ¶ 48). In addition, the Defamation Defendants and other coworkers continued to "constantly" make statements to the effect that

"Plaintiff was 'a slut paid with city money," and told Plaintiff that she continued to advance only because she was having an affair with Ali.  (*See id.* ¶¶ 51, 56, 66).

At some point in 2014, Plaintiff informed Ali that she intended to file a complaint with SBS's internal EEO office because of his conduct and the abuse that she had received from other employees at SBS.  (*Id.* ¶ 73).  In response, Ali behaved in a "disturbing fashion" and "began slapping himself" in front of Plaintiff.  (*Id.* ¶ 74).  Shortly thereafter, Ali and "other employees increased the intensity of their abuse" in an effort to "destroy Plaintiff's reputation and to drive her from her position."  (*See id.* ¶¶ 76-78).  In addition, Plaintiff was demoted and "virtually all of [her] responsibilities and duties were taken away from her."  (*See id.* ¶¶ 82-83).  Not long after, Plaintiff concluded that she "could no longer bear working" at SBS and was "forced to resign."  (*Id.* ¶¶ 90-91).  Plaintiff now brings this action against the City, SBS, NYBAC, Ali, the Defamation Defendants, and several other individual defendants  She brings a slew of different claims: claims under the New York City Human Rights Law (the "NYCHRL"), the New York State Human Rights Law (the "NYSHRL"), and New York State and City Civil Service Laws against all Defendants; separate claims for aiding and abetting discrimination under both the NYCHRL and the NYSHRL against all individual Defendants; claims under the federal Equal Pay Act ("EPA") and the New York Equal Pay Act, New York State Labor Law ("NYLL") Section 194, against SBS, the City, and NYBAC; claims under the Fair Labor Standards Act ("FLSA") and the New York State Minimum wage Act ("NYSMWA") against NYBAC alone; tort claims for assault, battery, and intentional infliction of emotional distress against Ali; and a claim for defamation against the Defamation Defendants.

## LEGAL STANDARDS

In evaluating a motion to dismiss, a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

Defendants move to dismiss most, but not all, of Plaintiff's claims. In particular, they move to dismiss Plaintiff's assault, battery, and defamation claims; her NYSHRL and NYCHRL claims against the Defamation Defendants; her failure-to-promote claim; her FLSA and NYSMWA claims; her EPA and NYLL claims; her claims under the New York State and City

4

Civil Service Laws; and all claims against SBS.  By contrast, they do not move to dismiss Plaintiff's discrimination and retaliation claims under the NYSHRL and the NYCHRL against the other Defendants, Plaintiff's *quid pro quo* sexual harassment claim, and Plaintiff's intentional infliction of emotional distress claim.  (*See* Mem. Law Supp. Defs.' Partial Mot. To Dismiss Am. Compl. (Docket No. 67) ("Defs.' Mem.") 3 n.1).  Plaintiff either consents to dismissal or does not oppose Defendants' motion with respect to (1) all claims against SBS (because it is a non-suable subdivision of the City) (*see* Mem. Law Opp'n Defs.' Mot. To Dismiss (Docket No. 70) ("Pl.'s Opp'n") 1 n.1); (2) her claims under New York State and City Civil Service Laws (*see id.* at 3 n.3); (3) her NYSHRL hostile work environment and discrimination claims against the Defamation Defendants (*see id.* at 10 & n.5); and (4) her retaliation claims against the Defamation Defendants (*see id.* at 13  n.8).[1]  Accordingly, those claims are deemed withdrawn or dismissed as abandoned.  *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assam I LLC,* No. 08-CV-442 (TPG)(FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

The Court will consider each of Defendants' arguments as to the other claims in turn.

**A. The Notice-of-Claim Requirement**

Defendants first move to dismiss Plaintiff's tort claims — namely, her assault-and-battery claim against Ali and her defamation claims against Ali and the Defamation Defendants — on

---

[1]    Strictly speaking, Plaintiff indicates that she withdraws her retaliation claims against "Amarilla-Fernandez, Arenas, Shenton, [and] Dauria," but makes no mention of Mateo and Carnesi (the other two Defamation Defendants).  Assuming that the omission of those two names was intentional, Plaintiff neither explains why those two defendants should be treated differently from the other Defamation Defendants nor responds to Defendants' arguments regarding her retaliation claims against those Defendants.  Accordingly, her retaliation claims against all of the Defamation Defendants can be and are dismissed.

the ground that she failed to serve a timely notice of claim. (*See* Defs.' Mem. 6-8). Under New York law, a plaintiff cannot maintain a tort claim against the state or a subdivision of the state unless he or she serves a notice of claim within ninety days of when the claim arose. *See* N.Y. Gen. Mun. Law. § 50-e. The notice must set forth the nature of the particular claims the plaintiff intends to bring and "is a condition precedent to bringing personal injury actions" against the state or a subdivision. *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *see also Lyles v. State*, 3 N.Y.3d 396, 400 (2004) ("[T]he State has waived its sovereign immunity against suit only to the extent that claimants comply with the provisions of the statute."). "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action" for lack of subject-matter jurisdiction. *Am. Tel. & Tel. Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (gathering cases); *see also Pristell v. New York*, 834 N.Y.S.2d 730, 731 (App. Div. 3d Dep't 2007).

Significantly, however, the notice-of-claim requirement applies to only some claims against individual municipal employees. Specifically, as other courts in this Circuit have observed, *see, e.g.*, *Hemrie v. City of New York*, No. 96-CV-213 (DLC), 2000 WL 1234594, at \*2-3 (S.D.N.Y. Aug. 31, 2000), the requirement applies to employees sued in their individual capacity through Section 50-k of the General Municipal Law, which requires Corporation Counsel to indemnify a municipal employee if his liability arose from conduct "within the scope of his employment and in the discharge of his duties" and "not in violation of any rule or regulation of his agency," and the injury was not caused by "intentional wrongdoing or recklessness on the part of the employee." N.Y. Gen. Mun. Law § 50-k(3). Thus, where a municipality would be required to indemnify one of its employee, the notice-of-claim

requirement applies to prevent a plaintiff from making an end-run around the rule entirely. *See Jean-Laurent v. Hennessy*, 05-CV-1155 (JFB)(LB), 2008 WL 3049875, at *19 (E.D.N.Y. Aug. 1, 2008) (collecting cases). On the flip side, the requirement does *not* apply to claims against a municipal employee for which the employee does not have a right to indemnification. *See Brooks v. Cty. of Nassau*, 54 F. Supp. 3d 254, 258 (E.D.N.Y. 2014); *Hemrie*, 2000 WL 1234594, at *3.

Here, Plaintiff does not dispute that she failed to submit a timely notice of claim with respect to the tort claims she now seeks to bring against Ali and the Defamation Defendants. Instead, she argues that a notice of claim was not required because she her claims are for intentional torts based on acts committed outside the scope of employment. (*See* Pl.'s Opp'n 5-7). The Court agrees. Plaintiff's claims for assault, battery, and defamation are premised on alleged conduct that would almost certainly be "in violation of . . . rule[s] or regulation[s]" and beyond the scope of the individual Defendants' employment. And in any event, the question of whether an act was committed outside the scope of employment is a "fact-sensitive one" that is a poor candidate for resolution at the motion to dismiss stage. *See Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 736 (S.D.N.Y. 2012). Accordingly, the Court concludes that Plaintiff's tort claims cannot be dismissed — at least at this stage — for failure to file a notice of claim.

**B.  The Timeliness of the Claims Against Carnesi**

Defendants' next argument — that Plaintiff's claims against Carnesi for defamation and under the NYSHRL and the NYCHRL are time barred (Defs.' Mem. 9-10) — can be swiftly rejected. The statute of limitations is an affirmative defense for which a defendant bears the burden of proof. *See, e.g.*, *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Accordingly, it is well established that "a pre-answer motion to

7

dismiss on this ground may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run." *Id.* (emphasis added) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."). That is plainly not the case here, as the Complaint alleges that "the Defamation Defendants" — a defined term that includes Carnesi (Am. Compl. ¶ 3) — made sexist and abusive comments to Plaintiff from 2010 through late 2014, the latter of which is well within the applicable statute of limitations. (*See id.* ¶¶ 66, 68; *see also id.* ¶ 22 (alleging that Carnesi "was an individual employed by the City" at "all relevant times)). Those allegations may well prove to be wrong — the only statements attributed to Carnesi specifically in the Complaint date to 2010 (*see id.* ¶ 41) and, according to a declaration submitted by Defendants in support of their motion, Carnesi left SBS in June 2011 (Decl. Shira M. Blank (Docket No. 72), Ex. A. ¶¶ 3-4) — but the Court cannot say that it is clear on the face of the complaint that the statute of limitations has run.

## C.  Discrimination and Hostile Work Environment Claims Under the NYCHRL

The Court turns, then, to Defendants' motion to dismiss Plaintiff's discrimination and hostile work environment claims against the Defamation Defendants under the NYCHRL. (*See* Defs.' Mem. 10-14). To state a claim for discrimination under the NYCHRL, a plaintiff must allege facts plausibly suggesting differential treatment of some degree based on a discriminatory motive; "the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013). To state a hostile work environment claim under the NYCHRL, a plaintiff must simply allege facts tending to show they were subject to "unwanted gender-based conduct."

*Williams v. NYCHA*, 872 N.Y.S.2d 27, 38 (App. Div. 1st Dep't 2009).  Significantly, the NYCHRL imposes liability for harassing conduct even if that conduct "does not qualify as 'severe or pervasive,' and questions of 'severity' and 'pervasiveness'" go only to the question of damages, not liability.  *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).  Nevertheless, even under the NYCHRL, "petty, slight, or trivial inconvenience[s] are not actionable."  *Kumanga v. N.Y.C. Sch. Constr. Auth.*, 910 N.Y.S. 2d 405, 2010 WL 1444513, at *14 (Sup. Ct. Apr. 2, 2010) (unpublished table opinion) (internal quotation marks omitted); *see also Williams*, 872 N.Y.S.2d at 41.

Applying those standards here, Plaintiff states a hostile work environment claim under the NYCHRL.  According to the Complaint, as Plaintiff continued to advance in her career at SBS, her coworkers behaved antagonistically towards her because they believed her success was "based on 'favoritism' and alleged sexual favors."  (*See* Am. Compl. ¶ 48; *see also, e.g.*, *id*. ¶ 42 (alleging that the Defamation Defendants "began calling Plaintiff a 'whore' and insisting that she had sex with her supervisors in order to remain employed"); *id.* ¶ 51 (claiming that the Defamation Defendants "constantly made statements that Plaintiff was 'a slut paid with city money,' insinuating that she received raises and additional assignments in exchange for sex with supervisors").  Additionally, the thrust of Plaintiff's Complaint is that women (but not men) who advanced or were successful at SBS were automatically assumed to be engaged in sexual relationships with their supervisors because it was believed that "younger female employees were required to have affairs with male SBS leaders if they wished to remain employed."  (*See id.* ¶ 38).  In other words, Plaintiff alleges that it was only because she is a woman that coworkers were antagonistic to her success and assumed that she performed sexual favors for her supervisors.  Taken together and assumed to be true, those allegations plausibly suggest that

9

Plaintiff was subject to "differential treatment" and that such differential treatment was on account of her sex.  *Cf. Nunez v. N.Y. State Dep't of Corr.*, No. 14-CV-6647 (JMF), 2015 WL 4605684, at *16 (S.D.N.Y. July 31, 2015) (dismissing a hostile work environment claim where the plaintiff failed to allege that her coworkers took any action against her "on the basis of her sex or any other protected characteristic").

**D.  Aiding-and-Abetting Claims Under the NYCHRL and the NYSHRL**

Defendants also move to dismiss Plaintiff's claims against the Defamation Defendants, under both the NYSHRL and the NYCHRL, for aiding and abetting unlawful discrimination and retaliation.  Both laws provide that an employee may be held liable for aiding and abetting a discriminatory act if he or she "actually participates in the conduct giving rise to a discrimination claim."  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (NYSHRL); *see also Feingold v. N.Y.*, 366 F.3d 138, 158-59 (NYCHRL).  Measured against that standard, there is no basis to dismiss Plaintiff's claim that the Defamation Defendants aided and abetted the creation of a hostile work environment in violation of the NYCHRL, as the allegations discussed above plausibly establish that the Defamation Defendants actively participated in a violation of the law.  *See Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658-59 (E.D.N.Y. 2015).  By contrast, Plaintiff fails to state an aiding-and-abetting claim with respect to discrimination under the NYSHRL.  As discussed above, Plaintiff has abandoned her discrimination and hostile work environment claims under the NYSHRL against the Defamation Defendants.  With those claims dismissed, it is unclear what unlawful conduct the Defamation Defendants aided and abetted.  Plaintiff argues that the Defamation Defendants' behavior — calling her a "whore" and falsely suggesting that she received favorable treatment only because she provided sexual favors to supervisors — aided and abetted "adverse employment action (constructive discharge)" and "the

denial of raises." (Pl.'s Opp'n 15). But Plaintiff does not allege that any of the Defamation Defendants participated in promotion decisions, were involved with investigating her complaints, stripped her of job duties or assigned her additional tasks, or participated in the creation of a hostile work environment *as defined by the NYSHRL*. Accordingly, the Court concludes that Plaintiff fails to specify "[t]he conduct by the [Defamation Defendants] that allegedly constituted aiding and abetting and the exact violation [of the NYSHRL] that the conduct is alleged to have aided and abetted." *Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F. Supp. 2d 261, 275 (E.D.N.Y. 2013).

Similarly, to the extent Plaintiff alleges that the Defamation Defendants aided and abetted acts of retaliation under the NYSHRL and the NYCHRL, her claims must be dismissed. As other courts in this Circuit have recognized, "[t]he difference between aider and abettor liability for retaliation and direct liability for retaliation" is unclear, as both claims require a plaintiff to show that the defendant at issue was directly involved in acts taken against the plaintiff in retaliation for protected activity. *Dillon*, 85 F. Supp. 3d at 662 (collecting cases). As discussed above, rather than responding to Defendants' arguments, Plaintiff abandoned her independent retaliation claims against the Defamation Defendants, effectively conceding that her allegations were insufficient to state a claim for retaliation. (Pl.'s Opp'n 13 n.8). More fundamentally, Plaintiff's sole allegation of protected activity is that she told Ali sometime in late 2014 that she planned to file a complaint with SBS's EEO office. (Am. Compl. ¶ 73). Nowhere in the Complaint, however, does she allege that Ali shared that information with the Defamation Defendants or that the Defamation Defendants otherwise became aware of her intention to file a complaint. Plaintiff alleges only that after she "made it clear to Defendant Ali that she would not tolerate his outrageous conduct, Ali and *the other employees* increased the intensity of their

11

abuse." (*Id.* ¶ 76). That is insufficient to state a claim for aiding and abetting retaliation against the Defamation Defendants.

### E.  The Failure-to-Promote Claim

Plaintiff's failure-to-promote claims, brought under both the NYSHRL and the NYCHRL, must also be dismissed. To state a claim for failure to promote under the NYSHRL (and, to some extent, under the NYCHRL), a plaintiff must generally allege that "1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she applied for and was denied promotion to a position for which she was qualified; and 4) the position remained open and the employer continued to seek applicants." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d. Cir. 2000) (internal quotation marks omitted); *accord Lomotey v. Conn.-Dep't of Transp.*, 355 F. App'x 478, 480 (2d Cir. 2009) (summary order); *see also Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 297 (S.D.N.Y. 2012) (noting that, although "courts have yet to establish a test for analyzing failure to promote claims under the NYCHRL," judges look to the NYSHRL test as a guide, "bearing in mind the more liberal standards of the NYCHRL"). A plaintiff need not show that she applied for a specific position, however, if "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226-27 (2d Cir. 2004); *accord Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). But that exception is a narrow one: It does not excuse a plaintiff from showing she applied for a position "simply because an employee asserts that an 'aura of discrimination' in the workplace somehow discouraged her from filing a formal application." *Petrosino*, 385 F.3d at 227 (quoting *Brown*, 163 F.3d at 710); *see also Billups v. Dent Wizard Int'l Corp.*, 2010 WL 2541361, at *8 (E.D.N.Y. June 14, 2010).

In this case, Plaintiff concedes that she "did not formally apply for a known vacant position" (Pl.'s Opp'n 16), and there is no basis to excuse her from that requirement. The Complaint alleges that, at some point in 2009, Plaintiff was "denied a promotion," but does not state what that position was, does not state that she was qualified for it, and gives no indication that there was even any vacant position available at the time. (*See* Am. Compl. ¶ 120). Plaintiff also alleges that she "expressed her desire to be promoted" to the Director of Contract Management in May 2012, and alleges that several male employees were later promoted to different director and manager positions. (*See id.* ¶¶ 121, 124, 127). That Plaintiff expressed a general interest in promotion, however, is not enough to excuse her from the specific-application requirement; indeed, one of the key purposes of that requirement is to protect "employers from the unfair burden of having 'to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply.'" *Petrosino*, 385 F.3d at 227 (quoting *Brown*, 163 F.3d at 710). Plaintiff fails to allege that any of those director or management positions were not posted; nor does she claim that she did not have knowledge of the vacancies before they were filled. (*See* Am. Compl. ¶¶ 121-29). Because Plaintiff admits that she never applied for a known vacant position, and does not allege that any vacancy was filled without being posted, her failure-to-promote claims must be and are dismissed. *Cf. Billups*, 2010 WL 2541361, at *8-9.

## F. The FLSA and NYSMWA Claims Against NYBAC

Plaintiff's sixteenth and seventeenth causes of action, for violation of the federal and state minimum wage laws, are brought against NYBAC alone. (*See* Am. Compl. ¶¶ 257-70). Specifically, Plaintiff alleges that NYBAC failed to compensate her for her work as Executive Director. (*See id.* ¶¶ 261, 268). Defendants concede that Plaintiff never received a paycheck

from NYBAC itself, but they contend that Plaintiff's claims fail because NYBAC is wholly controlled and run by SBS (and, by extension, the City) — making it exempt from the NYSMWA and, in any event, defeating her claims because Plaintiff received adequate compensation at all times from SBS. (Defs.' Mem. 20-22, 24). There is one, fundamental defect in those arguments: The Complaint alleges, and the Court must assume as true, that NYBAC is a "separate and distinct entity" from SBS. (*See* Am. Compl. ¶¶ 9, 47; *see also* Pl.'s Opp'n 18-19). Defendants dispute that and ask the Court to take judicial notice of NYBAC's webpage. (*See* Defs.' Reply 9). But even if the Court could do so (which seems unlikely), the webpage does not make clear whether NYBAC is a distinct entity or a mere subdivision of SBS. To be sure, the NYBAC page is nested within SBS's page, but it also includes an organization chart, corporation by-laws, staff lists, and budgets that might suggest NYBAC is a distinct entity with its own employees and payroll. *See, e.g.*, NYBAC Staff List Fiscal Year 2015, *available at* www.nyc.gov/html/sbs/downloads/pdf/nybac/NYBACStaffFY15.pdf.[2] Thus, there is no basis to dismiss Plaintiff's FLSA and NYSMWA claims at this time.

## G. The EPA and NYLL Claims

Finally, Defendants move to dismiss Plaintiff's equal pay claims under the EPA and NYLL, arguing that Plaintiff fails to name male comparators with adequate specificity and fails to allege the existence of a past practice of paying female employees less. (*See* Defs.' Mem. 22-23). To state equal pay claims under the EPA and NYLL, a plaintiff must allege that "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are

---

[2] Strangely, although Defendants contend that NYBAC is a mere subdivision of SBS, they do not move to dismiss all claims against NYBAC on the grounds that it is a non-suable entity — as they do (without opposition) with respect to all claims against SBS.

14

performed under similar working conditions." *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d135, 142 (2d Cir. 2000) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)); *see Pfeiffer v. Lewis Cty.*, 308 F. Supp. 2d 88, 98 n.8 (N.D.N.Y. 2004) (noting that an equal pay claim under the NYLL "is analyzed under the same standards applicable to the federal Equal Pay Act"). A plaintiff "'need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are "substantially equal" in skill, effort, and responsibility.'" *Lavin-McEleny v. Maris Coll.*, 239 F. 3d 476, 480 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995).

Measured against those standards, Plaintiff's allegations are plainly sufficient to state claims under both the EPA and the NYLL. Contrary to Defendants' contention, the Complaint includes extensive allegations of male employees who performed tasks similar to those Plaintiff performed and who were paid more than Plaintiff. (*See, e.g.*, Am. Compl. ¶¶ 96-100). And although Defendants fault Plaintiff for failing to allege a history or past practice of paying other female employees less than men or that any lower pay was motivated by hostile animus towards women (Defs.' Mem. 22-23), the law does not require that much. *McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001), upon which Defendants rely, does not suggest otherwise. That case involved Title VII claims of disparate treatment based on race and gender. *See id.* at 51-53. On appeal, the Second Circuit concluded that the plaintiff had failed, under the *McDonnell-Douglas* burden-shifting scheme, to present sufficient evidence to allow a reasonable trier of fact to conclude that defendant had treated her differently because of her gender. *Id.* at 55. In that context, the Court held that the plaintiff's claim failed because she had "proffered absolutely no evidence of statements or conduct by defendant or its agents evincing hostile animus toward women." *Id.* The decision says nothing about the proper standards to be applied to an EPA (or

NYLL) claim, and Defendants point to no other case suggesting that a plaintiff is required to allege a history of paying female employees less than men in order to state an equal pay claim.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.  In particular, the following claims are dismissed: Plaintiff's claims against the Defamation Defendants of retaliation and aiding and abetting retaliation under both the NYSHRL and the NYCHRL; Plaintiff's claims against the Defamation Defendants of discrimination and hostile work environment, and aiding and abetting the same, under the NYSHRL; Plaintiff's failure-to-promote claims under both the NYSHRL and the NYCHRL; Plaintiff's claims under New York State and City Civil Service Laws; and all of Plaintiff's claims against SBS.  By contrast, the following claims survive, either because Defendants did not move to dismiss or because their motion fell short: Plaintiff's NYCHRL and NYSHRL claims for discrimination, hostile work environment, and retaliation against all Defendants other than the Defamation Defendants and SBS; her NYCHRL discrimination, hostile work environment, and aiding and abetting hostile work environment claims against the Defamation Defendants; her *quid pro quo* sexual harassment claim; her tort claims; her EPA and NYLL claims against the City and NYBAC; and her FLSA and NYSMWA claims against NYBAC.

That leaves the question of whether Plaintiff should be granted leave to amend her Complaint.  The Court concludes that leave should not be granted with respect to the majority of Plaintiff's dismissed claims.  Plaintiff abandoned her NYSHRL discrimination and retaliation claims, her New York State and City Civil Service Laws claims, and all of her claims against SBS.  As for her aiding-and-abetting retaliation claims and aiding-and-abetting discrimination claim under the NYSHRL, the Court concludes that granting further leave to amend would be

futile.  Plaintiff was already given an opportunity to amend those claims to address the deficiencies raised in Defendant's initial motion to dismiss.  (Docket No. 56).  In fact, she was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the [initial] motion to dismiss."  (*Id.*).  Yet Plaintiff still fails to allege (and therefore presumably cannot allege) that the Defamation Defendants were aware that Plaintiff had engaged in any protected activity (let alone that they took any action against her because of any such protected activity) or that any of the Defamation Defendants were involved in the conduct giving rise to any NYSHRL discrimination claims.  *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming the district court's denial of leave to amend in part because of the previous opportunities that the plaintiff had received to amend the complaint).  By contrast, the Court concludes that leave should be granted (even though Plaintiff does not ask for it) to address the deficiencies in Plaintiff's failure-to-promote claims, as Defendants made their arguments with respect to those claims for the first time in their motion to dismiss Plaintiffs' amended complaint.  (*Compare* Docket No. 54, *with* Docket No. 67).  Thus, Plaintiff has not yet been given an opportunity to amend her complaint to address the deficiencies in those claims.  *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead . . . ."); *see also, e.g.*, *Winn v. Schafer*, 499 F. Supp. 2d 390, 398-99 (S.D.N.Y. 2007) (granting leave to amend even though plaintiff "neglected to request leave to replead").

Plaintiff shall file any second amended complaint within twenty-one days of the date of this Opinion and Order.  Defendants shall file their answer or other responsive pleading within twenty-one days of Plaintiff's filing a second amended complaint or forty-two days from the date of this Opinion and Order, whichever comes earlier.  Finally, the parties shall appear for an

initial pretrial conference with the Court on **July 18, 2016, at 3:45 p.m.** in **Courtroom 1105** of the **Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York 10007**. In accordance with the Notice of Initial Pretrial Conference (Docket No. 33), the parties shall file a joint letter and proposed Case Management Plan no later than the Thursday before the conference.

In light of this Opinion and Order, Plaintiff's motion for oral argument (Docket No. 71) is denied as moot. The Clerk of Court is directed to terminate Docket Nos. 66 and 71.

SO ORDERED.

Date: May 19, 2016
New York, New York

_____
JESSE M. FURMAN
United States District Judge