15 Civ. 7106 (JMF)(SN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE TULINO,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF SMALL BUSINESS SERVICES,
NEW YORK CITY BUSINESS ASSISTANCE
CORPORATION, SHAAZAD ALI, ISMAIL
MOHAMED, ROBERT WALSH, ANDREW
SCHWARTZ, ANTHONY DELL'OLIO, SARAH
KRAUSS, GRETA ARENAS, NARDA AMARILLA-
FERNANDEZ, BRYANA SHENTON, MYRNA
MATEO, PAT DAURIA and FRANK CARNESI,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street, Rm. 2-112*
*New York, New York  10007*

*Of Counsel:  Sean R. Renaghan*
*Tel:  (212) 356-2452*
*Matter No.:  2015-044056*

Donald Sullivan,
Sean R. Renaghan,
Tomasz Pacholec,
    Of Counsel.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ........................................................................................................... 5

      POINT I ........................................................................................................... 5

           PLAINTIFF'S FEDERAL CLAIMS ARE
           WITHOUT SUPPORT. .................................................................. 5

           A.   Plaintiff Has Failed to Support a Claim for
               Disparate Pay ..................................................................... 5

           B.   Plaintiff Cannot Support a Minimum Wage
               Claim................................................................................ 10

      POINT II .......................................................................................................... 13

           PLAINTIFF'S FAILURE TO PROMOTE
           CLAIMS FAIL................................................................................ 13

      POINT III......................................................................................................... 16

           PLAINTIFF'S CLAIMS AGAINST
           DEFENDANTS CARNESI, D'AURIA,
           DELL'OLIO, KRAUSS, MATEO, AND
           SHENTON ARE SUBJECT TO DISMISSAL......................................... 16

           A.   Standards.......................................................................... 16

           B.   Application to Individual Defendants............................... 20

CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aldrich v. Randolph Cent. Sch. Dist.,
    963 F.2d 520 (2d Cir. 1992).................................................................................5

Alexander v. Westbury Union Free Sch. Dist.,
    829 F. Supp. 2d 89 (E.D.N.Y. 2011) ..................................................................18

Apple v. Atl. Yards Dev. Co., LLC,
    No. 11-CV-5550 (JG), 2014 U.S. Dist. LEXIS 152053
    (E.D.N.Y. Oct. 27, 2014) ...................................................................................13

Barfield v. N.Y. City Health & Hosps. Corp.,
    537 F.3d 132 (2d Cir. 2008)..........................................................................11, 12

Belfi v. Prendergast,
    191 F.3d 129 (2d Cir. 1999)................................................................................6

Berwick v. New World Network Int'l, Ltd.,
    06 Civ. 2641 (JGK), 2007 U.S. Dist. LEXIS 22995
    (S.D.N.Y. Mar. 27, 2007) ..................................................................................19

Brown v. Coach Stores, Inc.,
    163 F.3d 706 (2d Cir. 1998)................................................................................13

Byrnie v. Town of Cromwell, Bd. of Educ.,
    243 F.3d 93 (2d Cir. 2001).................................................................................16

Campbell v. Cellco P'ship,
    860 F. Supp. 2d 284 (S.D.N.Y. 2012).................................................................13

Celle v. Filipino Rep. Enters. Inc.,
    209 F.3d 163 (2d Cir. 2000)................................................................................19

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)............................................................................................5

Conigliaro v. Horace Mann Sch.,
    95 Civ. 3555 (CSH), 2000 U.S. Dist. LEXIS 556
    (S.D.N.Y. Jan. 18, 2000).............................................................................6, 9, 10

Conte v. County of Nassau,
    596 F. App'x 1 (2d Cir. 2014) ............................................................... 19

Corning Glass Works v. Brennan,
    417 U.S. 188 (1974) ........................................................................... 5

Drury v. Waterfront Media, Inc.,
    05 Civ. 10646 (JSR), 2007 U.S. Dist. LEXIS 18435
    (S.D.N.Y. Mar. 7, 2007) ....................................................................... 8

EEOC v. Bloomberg L.P.,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) ............................................... 14, 20

EEOC v. Port Auth. of N.Y. & N.J.,
    768 F.3d 247 (2d Cir. 2014) .......................................................... 5, 6, 9

El v. Potter,
    01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447
    (S.D.N.Y. Dec. 6, 2004) ....................................................................... 12

Fried v. LVI Servs.,
    10 Civ. 9308 (JSR), 2011 U.S. Dist. LEXIS 57639
    (S.D.N.Y. May 23, 2011) ....................................................................... 18

Greene v. Trs. of Columbia Univ. in N.Y.,
    234 F. Supp. 2d 368 (S.D.N.Y. 2002) ............................................... 14, 20

Harris v. NYU Langone Med. Ctr.,
    12 Civ. 0454 (RA), 2013 U.S. Dist. LEXIS 99328
    (S.D.N.Y. July 9, 2013) ....................................................................... 18

Kasraie v. Jumeirah Hosp. & Leisure (USA), Inc.,
    12 Civ. 8829 (KBF), 2013 U.S. Dist. LEXIS 147805
    (S.D.N.Y. Oct. 10, 2013) ....................................................................... 13

Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.,
    716 F.3d 10 (2d Cir. 2013) ................................................................... 17

Manko v. Deutsche Bank,
    02 Civ. 10180 (TPG), 2004 U.S. Dist. LEXIS 4665
    (S.D.N.Y. Mar. 19, 2004) ....................................................................... 7

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ........................................................................... 17

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013) .......................................................... 17, 18

Nelson v. HSBC Bank USA,
    929 N.Y.S.2d 259 (2d Dep't 2011).........................................................................18

Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision,
    No. 14-CV-6647 (JMF), 2015 U.S. Dist. LEXIS 100528
    (S.D.N.Y. July 31, 2015) .......................................................................................25

Patterson v. Cty. of Oneida,
    375 F.3d 206 (2d Cir. 2004)...................................................................................20

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir. 2004)......................................................................13, 14, 15

Pollis v. New Sch. for Soc. Research,
    132 F.3d 115 (2d Cir. 1997)......................................................................................7

Ruiz v. County of Rockland,
    609 F.3d 486 (2d Cir. 2010)...................................................................................17

Sotomayor v. City of New York,
    862 F. Supp. 2d 226 (E.D.N.Y. 2012),
    aff'd, 713 F.3d 163 (2d Cir. 2013)..........................................................................18

Talwar v. Staten Island Univ. Hosp.,
    610 F. App'x 28 (2d Cir. 2015) .................................................................................6

Weinstein v. Garden City Union Free Sch. Dist.,
    CV 11-2509, 2013 U.S. Dist. LEXIS 144066
    (E.D.N.Y. Sept. 30, 2013)......................................................................................21

White v. Pacifica Found.,
    973 F. Supp. 2d 363 (S.D.N.Y. 2013).................................................................17, 18

Woods v. Newburgh Enlarged City Sch. Dist.,
    288 F. App'x 757 (2d Cir. 2008) ............................................................................20

**Statutes**

29 U.S.C. § 206 ................................................................................................5, 6, 10

29 U.S.C. § 255(a) ...................................................................................................7

Equal Pay Act .............................................................................................. *passim*

Fair Labor Standards Act ............................................................................. *passim*

N.Y.C. Admin. Code § 8-502 ..................................................................................14

N.Y. C.P.L.R. § 214 ..........................................................................................14, 20

N.Y. C.P.L.R. § 215 ...............................................................................................19

New York City Human Rights Law ............................................................... *passim*

New York General Municipal Law 50-i ..................................................................20

New York Labor Law ......................................................................................5, 12, 13

New York State Human Rights Law ............................................................... *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
MICHELLE TULINO,

                              Plaintiff,

           -against-                        15 Civ. 7106 (JMF)(SN)

THE CITY OF NEW YORK, et al.,

                             Defendants.
------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

       Plaintiff, a former employee of the New York City Department of Small Business Services ("SBS"), brings a myriad of claims against the City, a related entity, and twelve current and former employees of SBS. These claims range from allegations of violations of the Equal Pay Act ("EPA") and the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), to claims of sexual harassment and retaliation under New York City ("CHRL") and State ("SHRL") Human Rights Laws, to tort claims of defamation, battery, assault, and intentional infliction of emotional distress. While Plaintiff's claims focus on an allegation of harassment by a single supervisor, Plaintiff has sought to buttress this central contention and expend the resources of Defendants and the Court by adding numerous additional and unsupported claims against the City and multiple individuals. Defendants deny all allegations, but Defendants move for summary judgment on only a portion of those claims, including all of Plaintiff's claims under federal law.

       Plaintiff's claims under the EPA and the FLSA – which serve as the basis for Plaintiff invoking the jurisdiction of this Court – are subject to dismissal on summary judgment.

Plaintiff's EPA claims fail because Plaintiff – who herself received several raises and promotions during her time with SBS – has failed to produce evidence that she was paid less than a male employee performing substantially equal work for SBS.  To understand the unreasonableness of Plaintiff's EPA claims, the Court need look no further than the litany of managers, supervisors – including Plaintiff's own supervisors – and veteran City employees that Plaintiff self-servingly identifies as comparators.

Plaintiff's FLSA claim against New York Business Assistance Corporations ("NYBAC") also fails because the record evidence establishes that the work Plaintiff performed concerning NYBAC was part and parcel of her job for SBS.  Because Plaintiff received more than the minimum wage from the City of New York, Plaintiff has no minimum wage claim against NYBAC.

Plaintiff's failure to promote claims also must fail.  Once again, not only did Plaintiff receive several raises and promotions, but Plaintiff did not apply for, and was not qualified for, the only two positions that she identified as within the limitations period.  As with her EPA claim, Plaintiff improperly compares herself to individuals who were already in managerial level positions, in a division that Plaintiff never worked in, and possessed qualifications that Plaintiff did not possess.

Finally, Plaintiff's claims against several of the individually named defendants – being based on hearsay and speculation and concerning individuals who had only tangential involvement in the core allegations concerning this case – must also be dismissed.  Notably, Plaintiff's own deposition testimony both contradicted her Second Amended Complaint and eviscerated her claims against these individuals.

## STATEMENT OF FACTS[1]

Plaintiff began working as a college intern for the City of New York in 2007.  See Def. 56.1 Stmt. at ¶ 2.  Between 2007 and 2015, Plaintiff sought and accepted new positions on approximately four occasions and received an increase in her City salary on no less than five occasions.  See id. at ¶¶ 2-43.  From October 2012 through June 2015, when Plaintiff resigned, Plaintiff held the title of Contract and Audit Manager in SBS's Financial Management and Administration ("FMA") Division.  See id. at ¶ 27-55.  During that time period, Plaintiff's salary increased from $63,000 to $75,000 per year.  See id.  Within FMA, Plaintiff's duties included acting as liaison with outside auditors and the New York City Council's Finance Division, distributing and recording petty cash transactions, reviewing grant agreements with NYBAC to ensure compliance, and maintaining NYBAC's financial records.  See id.

NYBAC is a legal entity created by the City of New York for the purpose of promoting employment opportunities and encouraging economic development of the City.  See id. at ¶ 32.  NYBAC is wholly controlled by a board of directors that are required by its bylaws to be employees of the City, is co-located with the SBS offices, and explicitly requires that "[a]ny member who is an officer or employee of the City of New York or any agency of the City of New York shall serve as such in the furtherance of the interests of the City of New York." See id. at ¶ 33-35.  Plaintiff was directed to do NYBAC work by her City supervisor, recorded the time she spent performing work for NYBAC on her City timesheet, and received multiple raises in her City salary for her responsibilities concerning NYBAC.  See id. at ¶ 38-49.

Plaintiff claims that she was paid less for performing work equal to the following:

---

[1] For a complete statement of the undisputed facts, Defendants respectfully refer the Court to its Local Civil Rule 56.1 Statement of Undisputed Facts, dated June 7, 2017 ("Def. 56.1 Stmt."), submitted herewith.

- Jonathan Bigelow – Senior Program Manager, Business Development Division (resigned August 2012);
- John Chapman – Executive Director, Department of Economic and Financial Opportunity;
- Jung ("Will") Choi – Procurement Operations Manager, FMA;
- Kelvin Collins – Assistant Commissioner, Business Development Division;
- Santino DePaola – Executive Director, Business Development Division (resigned February 2012);
- Justin Gale – Executive Director, Workforce Development Division;
- Kristofer Goddard – Executive Director, Neighborhood Development Division;
- James Mettham – Assistant Commissioner, Neighborhood Development Division;
- Chris Neale – Assistant Commissioner, Workforce Development Division;
- Norberto Serrano – Director, Contract Budget Review, FMA;
- Xenon Walcott – Assistant Commissioner, Workforce Development Division; and
- Jared Walkowitz – Client Services Manager, Office of Industrial and Manufacturing Businesses (resigned May 2012).

<u>See</u> Def. 56.1 Stmt. at ¶¶ 96-168.

Plaintiff also claims she should have received promotions that were earned, in December 2012, by two persons on the above list:  Mettham and Goddard.  <u>See</u> <u>id.</u> at ¶¶ 82-95. Mettham was promoted from the title of Executive Director of the Neighborhood Development Division, to Assistant Commissioner of the Neighborhood Development Division.  <u>See</u> <u>id.</u> at ¶¶ 87-88.  Goddard was promoted from the title of Director of Business Improvement District ("BID") Expansion and New Initiatives, to Executive Director of BID Development and Commercial Revitalization.  <u>See</u> <u>id.</u> at ¶¶ 92-94.  Unlike Goddard and Mettham, Plaintiff had never served in a director or other managerial level role, did not have a master's degree, and did not have experience working in the Neighborhood Development Division or managing the Business Improvement Districts.  <u>See</u> <u>id.</u> at ¶ 2-37.

## ARGUMENT

A motion for summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As such, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### POINT I

### PLAINTIFF'S FEDERAL CLAIMS ARE WITHOUT SUPPORT.

Plaintiff has invoked the jurisdiction of the Court in this action solely based on the alleged violation of two federal laws.  One claim alleges a violation of the EPA against SBS and NYBAC.  The other alleges a failure to pay the minimum wage mandated by the FLSA against NYBAC.  Both are entirely without merit and should be dismissed.

**A.    Plaintiff Has Failed to Support a Claim for Disparate Pay**

The EPA prohibits an employer from discriminating against its employees by paying different wages to males and females who perform "equal work." 29 U.S.C. § 206(d)(1). In order to state a prima facie case of salary discrimination based on sex, "a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation omitted); Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 524 (2d Cir. 1992) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).  The same standard applies to claims under New York Labor Law § 194.  See

Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015).

The Second Circuit holds that, in order to establish a violation of the EPA, a plaintiff must show that her job and the higher paid position are "substantially equal." See Port Auth. of N.Y. & N.J., 768 F.3d at 255. Jobs which are "merely comparable" are insufficient to satisfy a plaintiff's burden. See id. at 254. Similarly, "the performance of some common tasks does not make jobs substantially equal when material differences also exist." See Conigliaro v. Horace Mann Sch., 95 Civ. 3555 (CSH), 2000 U.S. Dist. LEXIS 556, at *21 (S.D.N.Y. Jan. 18, 2000). "[A] successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." Port Auth. of N.Y. & N.J., 768 F.3d at 256.

If a plaintiff shows that she was paid less than an employee of the opposite sex for substantially equal work, the burden of proof shifts to defendants to show by a preponderance of the evidence that the differential is justified under one of the EPA's exceptions: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any factor other than sex that is implemented for a legitimate business reason. See 29 U.S.C. § 206(d)(1); Belfi v. Prendergast, 191 F.3d 129, 136 (2d Cir. 1999). Where defendants come forward with proof of a justification, plaintiff may counter with evidence that the defense is actually a pretext for sex discrimination. Belfi, 191 F.3d at 136.

Here, Plaintiff can point to no evidence showing that a male employee of SBS was paid more for performing substantially equal work. Instead, she makes precisely the type of broad generalizations and conclusory allegations that the Second Circuit found insufficient at the pleading stage in EEOC v. Port Authority. See 768 F.3d at 256.

As an initial matter, several of Plaintiff's alleged EPA violations are time-barred.

The statute of limitations for a claim under the EPA is two years, except in regard to willful violations, which carry a three year statute of limitations.   See 29 U.S.C. § 255(a).  In order for the three year statute to apply, a plaintiff must produce proof that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." See Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997).  "[A] cause of action based on receipt of a paycheck prior to the limitations period is untimely and recovery for pay differentials prior to the limitations period is barred irrespective of subsequent, similar timely violations."  Id.; Manko v. Deutsche Bank, 02 Civ. 10180 (TPG), 2004 U.S. Dist. LEXIS 4665, at *19 (S.D.N.Y. Mar. 19, 2004) ("a violation of the Equal Pay Act occurs on each occasion when a plaintiff is compensated in a discriminatory manner").

Plaintiff initiated this action on September 9, 2015.  See Def. 56.1 Stmt. at ¶ 223. Accordingly, any claim concerning an alleged disparity in pay for work performed and paid prior to September 9, 2013, is barred by the applicable statute of limitations.  Even if Plaintiff were able to show a willful violation, Plaintiff's claims accruing before September 9, 2012, would still be barred.  Of the alleged comparators identified by Plaintiff, three (Bigelow, DePaola, and Walkowitz) had ceased working for SBS by September 2012.  See Def. 56.1 Stmt. at ¶¶ 101, 128, 167.  Plaintiff's comparison in regard to at least three more (Chapman, Collins, and Walcott) is based upon work performed by Plaintiff in roles that she held prior to September 2012.  See id. at ¶¶ 103, 119, 161.  Accordingly, Plaintiff's claims in regard to each of these six comparators are barred by the applicable statute of limitations.

Even if Plaintiff's EPA claims were not partially-barred, Plaintiff has also failed to produce evidence that any of her comparators were paid more for substantially equal work. From 2012 through when she ceased working for SBS in 2015, Plaintiff held the title of Contract

and Audit Manager within the FMA Division, and her responsibilities primarily included acting as a liaison with outside auditors and the City Council Finance Division, disbursing and tracking petty cash, reviewing NYBAC grants for compliance with applicable guidelines, and keeping the books for NYBAC using Quickbooks software. See id. at ¶¶ 27-55. Not only did the comparators identified hold different titles and roles, the majority worked in different divisions for different supervisors. See id. at ¶¶ 96-168.

Only two of the alleged comparators worked in the FMA division at all: Serrano and Choi. See id. at ¶¶ 108, 158. However, both worked in different units of that division and for different direct supervisors than Plaintiff. See id. Serrano, a more than 30 year employee of the City, worked in a managerial position as Director of Contract Budget Review. See id. at ¶ 159. Choi, who had already worked continuously in the FMA division for approximately four years when Plaintiff joined FMA in 2012, worked in procurement, and his responsibilities were directly focused on ensuring efficient and compliant procurement of goods and services for the agency. See id. at ¶¶ 108-17. No record evidence supports Plaintiff's conclusory claims that the work performed by these individuals is somehow substantially equal to the work she performed.

Even if Plaintiff could overcome this hurdle, any differential in pay is justified by a gender-neutral explanation. Serrano had been working for the City for more than 30 years and his pay records show that his advanced pay is the product of incremental raises – not unlike those received by Plaintiff – during his long period of service. See id. at ¶ 157. While Plaintiff made more than Choi from February 2012 through January 2013, Choi's higher pay thereafter is expressly due to the fact that Choi received an offer of employment with a higher salary from a different agency, and SBS matched the offer in order to retain his services. See id. at ¶¶ 115-16; Drury v. Waterfront Media, Inc., 05 Civ. 10646 (JSR), 2007 U.S. Dist. LEXIS 18435, at *13

(S.D.N.Y. Mar. 7, 2007) ("Salary matching and experience-based compensation are reasonable, gender-neutral business tactics") (collecting cases).

   Plaintiff's EPA claim is further undercut by the comparatively high level positions held by Plaintiff's alleged comparators.  Four of Plaintiff's alleged comparators (Chapman, DePaola, Gale, and Goddard) held the role of Executive Director within an SBS division, and four more (Collins, Mettham, Neale, and Walcott) served as Assistant Commissioners of SBS divisions.[2]  See Def. 56.1 Stmt. at ¶¶ 104-63.  In total, nine of the twelve alleged comparators held supervisory positions, a responsibility that Plaintiff admits she never had.  See id. at ¶¶ 50, 104-63; Conigliaro, 2000 U.S. Dist. LEXIS 556, at *28 ("difference in the relative responsibilities and accountability of [plaintiff] and [comparator] lends further support to defendant's contention that the two jobs were substantially dissimilar").  Not only did the vast majority of Plaintiff's alleged comparators hold these higher level supervisory positions in divisions separate from where Plaintiff was working, but some of the comparators were either once *Plaintiff's* direct supervisor or *supervised* Plaintiff's direct supervisor.  See Def. 56.1 Stmt. at ¶¶ 104, 163.  While Plaintiff clearly has a high opinion of herself, and a low opinion of the work done by almost everyone else, Plaintiff's conclusory and absurd contentions – such as claiming that everyone is a contract manager or that she was performing the same work as her boss's boss because some work was delegated to her – is insufficient to meet Plaintiff's burden to support her EPA claims.  See id. at ¶ 148, 161; Port Auth. of N.Y. & N.J., 768 F.3d at 257

---

[2] While Plaintiff's makes much of the fact that Ali gave her the title of Executive Director of NYBAC, Plaintiff admits that she was not an Executive Director within SBS and that she remained subordinate to Executive Directors in the FMA division, such as Mohamed.  See Def. 56.1 Stmt. at ¶ 29, 47.  Indeed, the work given to Plaintiff as justification for her NYBAC "executive director" title is significantly different from, and notably lacking in the substantive decision-making and supervisory responsibilities, that accompanies that title within SBS. Compare id. at ¶ 44, with id. at ¶¶ 93, 126, 134, 140-41, 146.

("broad generalizations based on mere job classifications are not cognizable under the EPA"); Conigliaro, 2000 U.S. Dist. LEXIS 556, at *21 ("the performance of some common tasks does not make jobs substantially equal when material differences also exist").

**B.      Plaintiff Cannot Support a Minimum Wage Claim.**

### 1.  Plaintiff's FLSA Claim Fails

The FLSA requires employers to compensate their employees at the prevailing minimum wage for all hours worked.  See 29 U.S.C. § 206(a).  The federal minimum wage is $7.25 per hour.  See id.

Here, it is beyond dispute that Plaintiff received a salary – ranging from $63,000 to $75,000 per year within the limitations period – from the City of New York that far exceeded the minimum wage.[3]  See Def. 56.1 Stmt. at ¶ 26-43.  Nonetheless, Plaintiff brings a minimum wage claim against a legal entity controlled by the City of New York.

NYBAC is a legal entity that was created by the City of New York for the purpose of promoting employment opportunities and encouraging economic development of the City, a purpose intertwined with the mission of City agencies such as SBS.  See id. at ¶ 32.  NYBAC is wholly controlled by a board of directors that are required by its bylaws to be employees of the City, is co-located with the SBS offices, and explicitly requires that "[a]ny member who is an officer or employee of the City of New York or any agency of the City of New York shall serve as such in the furtherance of the interests of the City of New York."  See id. at ¶¶ 33-35.  Plaintiff admits that she was directed to do NYBAC work by her City

---

[3] Even if Plaintiff's claim that she worked a combined total of 60 hours a week – a claim that is utterly refuted by the time records produced in this action – were taken as true, and it were assumed that Plaintiff worked a full 52 weeks each year without days off for vacation or holidays, Plaintiff's hourly wage within the limitations period would still range from $20.19 per hour to $24.04 per hour.  See Ex. A (2d Am. Compl.) at ¶¶ 276, 282; Def. 56.1 Stmt. at ¶¶ 26-43.

supervisor, that she recorded the time she spent performing work for NYBAC on her City timesheet, and that she received multiple raises in her City salary for her responsibilities concerning NYBAC.  See id. at ¶¶ 38-49.  Accordingly, the work that Plaintiff performed concerning NYBAC was an admitted part of her employment by the City of New York, and she has absolutely no basis to claim that she did not receive the minimum wage.

At best, Plaintiff may argue that NYBAC functioned as a joint employer.  A joint employment situation arises where "employment by one employer is not completely disassociated from employment by the other employer(s)." 29 C.F.R. § 791.2(a) (also explaining that employment by two or more employers at the same time constitutes joint employment unless "all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee").  Even if Plaintiff could establish that NYBAC qualified as an employer within the meaning of the FLSA – a point Defendants do not concede – there is absolutely no basis for her to argue that her NYBAC work was "completely dissociated" from her employment with the City of New York and, indeed, such an argument would contradict the record and Plaintiff's own testimony.  See Def. 56.1 Stat. at ¶¶ 32-48; see also 29 C.F.R. § 791.2(a); Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 140-49 (2d Cir. 2008) (discussing the tests used to determine whether an entity is an employer in order to create a joint employment context).  As such, any "employment" by NYBAC would amount to joint employment with the City.

U.S. Department of Labor regulations concerning joint employment explicitly state:

> [I]f the facts establish that the employee is employed jointly by two or more employers . . . all of the employee's work for all of the joint employers during the workweek is considered as

> one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act . . . . *In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.*

29 C.F.R. § 791.2(a) (footnotes omitted) (emphasis added).  As such, even if Plaintiff were able to establish that NYBAC was an employer, NYBAC would be entitled to a credit for the wages paid to Plaintiff by the City.  Id.; Barfield, 537 F.3d at 141.

### 2.  Plaintiff's NYLL Claim Fails

The New York State Minimum Wage Act exempts certain classes of *individuals* – rather than employers – from coverage under its provisions.  Both the New York Labor Law and the New York State Department of Labor Regulations specifically exclude from coverage those who work for a municipal government.  See El v. Potter, 01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447, at *37 (S.D.N.Y. Dec. 6, 2004) ("The New York State Minimum Wage Act . . . excludes from coverage those people employed 'by a federal, state or municipal government or political subdivision thereof.'").  Pursuant to N.Y. Labor Law § 651(5)(n), an employee is defined to be "any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work: (n) by a federal, state or municipal government or political subdivision thereof." The New York State Department of Labor mirrors this definition, excluding from coverage "any individual employed by a Federal, State or municipal government or political subdivision thereof."  Section 12 N.Y.C.R.R. § 142-3.12(b).  Accordingly, as a result of her status as an employee of the City, Plaintiff was not covered by the New York State Minimum Wage Act at all times relevant to this action.

Even if Plaintiff were covered, her claims under the New York State Minimum

Wage Act fail for the same reasons as her FLSA claims.  The minimum wage in effect under the New York Labor Law ("NYLL") during the time frame at issue ranged from $7.15 per hour to $9.00 per hour.  See N.Y. Lab. Law § 652.  Moreover, the "NYLL's definitions are nearly identical to the FLSA's . . . and courts use the same tests to determine joint employment under both the NYLL and the FLSA."  Apple v. Atl. Yards Dev. Co., LLC, No. 11-CV-5550 (JG), 2014 U.S. Dist. LEXIS 152053, at *18 n.4 (E.D.N.Y. Oct. 27, 2014).  Accordingly, once again, even if Plaintiff could establish that NYBAC was an employer, Plaintiff's claims would still fail due to the fact that Plaintiff's City salary – which expressly included additional wages for NYBAC work – was significantly in excess of the minimum wage during all times at issue.

## POINT II
## PLAINTIFF'S FAILURE TO PROMOTE CLAIMS FAIL.

Plaintiff's failure to promote claims are brought under State and City law.  In order to establish such a claim, plaintiff must demonstrate that (1) she was a member of a protected group; (2) she applied for and was qualified for the promotion; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the same qualifications.  See Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004) (analyzing claims under Title VII, the SHRL, and the CHRL); Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998); Kasraie v. Jumeirah Hosp. & Leisure (USA), Inc., 12 Civ. 8829 (KBF), 2013 U.S. Dist. LEXIS 147805, at *11 (S.D.N.Y. Oct. 10, 2013) (citing Brown); Campbell v. Cellco P'ship, 860 F. Supp. 2d 284, 297 (S.D.N.Y. 2012) (using the Title VII and SHRL standard as "a guide in analyzing plaintiff's failure to promote claims" under the CHRL); see also Opinion and Order, dated May 19, 2016, ECF No. 74 ("5/19/16 Order") at 12-13 (discussing instant plaintiff's SHRL and CHRL claims for failure to promote).

As an initial matter, the majority of the "promotions" that Plaintiff claims she was denied fall outside of the statute of limitations.  The statute of limitations for claims under the SHRL and the CHRL is three years.  See EEOC v. Bloomberg L.P., 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) (citing N.Y. C.P.L.R. § 214; N.Y.C. Admin. Code § 8-502(d)); Greene v. Trs. of Columbia Univ. in N.Y., 234 F. Supp. 2d 368, 377 (S.D.N.Y. 2002).  Plaintiff commenced this action on September 9, 2015.  See Def. 56.1 Stmt. at ¶ 223.  Accordingly, Plaintiff's claims concerning promotions that she was allegedly denied prior to September 9, 2012 are barred by the statute of limitations.

The only promotions within the limitations period identified by Plaintiff are the selection of Mettham and Goddard, respectively, for Assistant Commissioner and Executive Director positions within the Neighborhood Development division.  See Def. 56.1 Stmt. at ¶¶ 57-95.  It is beyond dispute that Plaintiff did not apply for these positions.  See id.  Instead, Plaintiff claims the positions were not posted and that she had told her direct supervisor, Ali, of her desire to be placed into a Director or Executive Director position.  See Ex. A (2d Am. Compl.)[4] at ¶¶ 138-142.  "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer."  See Petrosino, 385 F.3d at 227.  This exception is narrow and general expressions of interest in promotion are insufficient.  See id.; 5/19/16 Order at 13.  Plaintiff has not produced any evidence that she was unaware of the openings in the Neighborhood Development Division following the departure of the former Assistant

---

[4] Unless otherwise noted, all exhibits referenced are annexed to the Declaration of Sean R. Renaghan in Support of Defendant's Motion for Summary Judgment, dated June 7, 2017.

Commissioner,[5] and Plaintiff's claim that she expressed a desire "to be promoted to a Director or Assistant Commissioner position" to Ali – a supervisor in a division completely separate from the Neighborhood Development Division – is insufficient. See Ex. A (2d Am. Compl.) at ¶ 141; Petrosino, 385 F.3d at 227.

Even if Plaintiff had applied for – or could be excused from applying for – the Assistant Commissioner and Executive Director positions in the Neighborhood Development Division, Plaintiff has failed to meet her burden to establish that she was qualified.   The "promotions" Plaintiff claims she should have received were managerial positions more than one level above Plaintiff's role at the time, as evidenced by Plaintiff's express statement that she wanted "to be promoted to a Director" position.  See Ex. A (2d Am. Compl.) at ¶ 141; See Def. 56.1 Stmt. at ¶¶ 86-94.  The positions were also in a division that Plaintiff did not work in, and filled by individuals that had significantly more experience and had been working in Director level or above positions directly related to these roles.  See Def. 56.1 Stmt. at ¶¶ 86-94, 136-47.

In December 2012, following the departure of Paul Nelson: (1) Mettham moved from the position of Executive Director in the Neighborhood Development Division, to Assistant Commissioner of the Neighborhood Development Division; and (2) Goddard moved from the position of Director of BID Expansion and New Initiatives, to Executive Director of BID Development and Commercial Revitalization.  See Def. 56.1 Stmt. at ¶¶ 86-94.  Unlike both Goddard and Mettham, Plaintiff had never served in a director or other managerial level role, did not have a master's degree (and was more than a year away from getting it), and did not have experience working in the Neighborhood Development Division or managing the Business

---

[5] To the extent Plaintiff intends to claim she was unaware of this departure and the openings it created, this is only further evidence of Plaintiff's lack of qualification given her unfamiliarity with and lack of experience in the Neighborhood Development division.

Improvement Districts.  See id. at ¶¶ 2-42.  As such, Plaintiff cannot establish that she was qualified, let alone more qualified than the successful candidates, and her claim should be dismissed. See generally Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("plaintiff's credentials would have to be so superior . . . that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'") (citations omitted).

Plaintiff's failure to promote claim, being a gender discrimination claim at its base, also fails because Plaintiff cannot point to evidence supporting an inference of discrimination.  There is no evidence that SBS even considered men with qualifications similar to Plaintiff's for these positions, and as discussed above, the individuals selected were significantly more qualified and suited for the specific positions than Plaintiff.  There is also no evidence that Elizabeth DeLeon, who was Deputy Commissioner of the Neighborhood Development Division at the time, held any discriminatory animus toward Plaintiff.  See id. at ¶ 85.  Plaintiff's conclusory allegations about an alleged culture of discrimination, based on allegations concerning individuals that Plaintiff has completely failed to connect to these promotions, are insufficient to meet her burden.  This is particularly true in light of the history of promotions and raises that Plaintiff received, and the fact that there were numerous women in high-level roles with the agency.  See id. at ¶ 9-43, 59.

## POINT III

### PLAINTIFF'S CLAIMS AGAINST DEFENDANTS CARNESI, D'AURIA, DELL'OLIO, KRAUSS, MATEO, AND SHENTON ARE SUBJECT TO DISMISSAL.

**A.    Standards**

Defendants move to dismiss all claims against individual Defendants Carnesi,

D'Auria, Dell'Olio, Krauss, Mateo, and Shenton.  The surviving claims about these individuals allege: (1) discrimination, retaliation, and hostile work environment under the SHRL and CHLR – Dell'Olio and Krauss; (2) discrimination under the CHLR – all; (3) aiding and abetting discrimination under the CHRL – all; (4) quid pro quo sexual harassment under the SHRL – all; and (5) defamation – Carnesi, D'Auria, Mateo, and Shenton.  See 5/19/16 Order at 16.

### 1.   Discrimination, Retaliation, and Hostile Work Environment

Claims of discrimination and retaliation are analyzed using the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See White v. Pacifica Found., 973 F. Supp. 2d 363, 378-79 (S.D.N.Y. 2013). To establish a prima facie case of discrimination, "a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010).  Similarly, a prima facie case of retaliation requires a plaintiff to "demonstrate that '(1) she engaged in protected activity;[6] (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted).  Although the CHRL covers a broader range of conduct than the SHRL, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive" or the result of protected conduct.  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109-110, 112 (2d Cir. 2013).

To establish a hostile work environment under the SHRL, "a plaintiff must 'show

---

[6] Plaintiff claims that she was retaliated against for complaining about Ali in November 2014. See Ex. B (Pl. Dep.) at 299:16 – 300:3.

that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class].'" Sotomayor v. City of New York, 862 F. Supp. 2d 226, 260 (E.D.N.Y. 2012) (citation omitted), aff'd, 713 F.3d 163 (2d Cir. 2013).  Once again, although claims under the CHRL are required to be analyzed separately and more liberally, the CHRL is not meant to operate as a "general civility code" and plaintiff must still meet her burden of showing that the conduct alleged was caused by a discriminatory motive.  See Nelson v. HSBC Bank USA, 929 N.Y.S.2d 259, 264 (2d Dep't 2011); Mihalik, 715 F.3d at 109-11.

### 2.  Aiding and Abetting

A co-worker may be liable under the SHRL and CHRL where he or she "actually participates in the conduct giving rise to a discrimination claim." White, 973 F. Supp. 2d at 277. This claim "requires a showing of direct, purposeful participation" on the part of the co-worker accused. Fried v. LVI Servs., 10 Civ. 9308 (JSR), 2011 U.S. Dist. LEXIS 57639, at *22 (S.D.N.Y. May 23, 2011); see Harris v. NYU Langone Med. Ctr., 12 Civ. 0454 (RA) (JLC), 2013 U.S. Dist. LEXIS 99328, 101-104 (S.D.N.Y. July 9, 2013).

### 3.  Quid Pro Quo Sexual Harassment

"Quid pro quo sexual harassment occurs when submission to or rejection of improper or unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual." Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 108 (E.D.N.Y. 2011) (quotation omitted).  In order to make out a claim of quid pro quo sexual harassment, the plaintiff must demonstrate that a tangible employment action resulted from her refusal to submit to sexual advances.  See id.  Here, there is no evidence that any of the

defendants took a tangible employment action concerning Plaintiff, let alone evidence that any of these individuals acted due to Plaintiff's refusal to engage in sexual conduct.[7]

### 4.  Defamation

A viable defamation claim in New York requires "(1) a false and defamatory statement of and concerning the plaintiff[s]; (2) publication by defendant[s] of such a statement to a third party; (3) fault on the part of the defendant; and (4) injury to [the] plaintiff[s]." Berwick v. New World Network Int'l, Ltd., 06 Civ. 2641 (JGK), 2007 U.S. Dist. LEXIS 22995, at *37 (S.D.N.Y. Mar. 27, 2007) (quotation omitted).  A defamatory statement under New York law is "one that exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society." Celle v. Filipino Rep. Enters. Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quotation omitted).   Further, "the New York Constitution provides for absolute protection of opinions" and "[t]he burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion."  Id. at 178-79

### 5.  Statute of Limitations

Plaintiff filed this action on September 9, 2015.  See Def. 56.1 Stmt. at ¶ 223.

Generally, "a defamation claim must be asserted within one year of the date on which the defamatory statement was published or uttered to a third party, even if it would have been impossible for the plaintiff to discover the injury at that time."  Conte v. County of Nassau, 596 F. App'x 1, 4-5 (2d Cir. 2014) (citing N.Y. C.P.L.R. § 215(3)).  However, if a plaintiff sues

---

[7] Indeed, Plaintiff's basis for her allegations against many of the individual defendants is an allegedly mistaken belief that Plaintiff received preferential treatment because she engaged in sexual activity. See generally Ex. A (2d Am. Compl.)

a municipality or its employees, the one year and ninety day statute of limitations under New York General Municipal Law 50-i[8] applies.  Id.

      The statute of limitations for claims under the SHRL and the CHRL is three years. See Bloomberg L.P., 967 F. Supp. 2d at 831 (citing N.Y. C.P.L.R. § 214; N.Y.C. Admin. Code § 8-502(d)); Greene, 234 F. Supp. 2d at 377.

## B.  Application to Individual Defendants

### 1.  Carnesi

      Despite opposing Defendants' previous motion to dismiss the claims against Carnesi as untimely and arguing that Carnesi engaged in conduct concerning Plaintiff in 2014 and 2015, discovery has proved Plaintiff's previous representations to the Court to be entirely false.  See ECF No. 70 at 7-8.  Carnesi retired from SBS effective July 1, 2011.  See Def. 56.1 Stmt. at ¶ 172.  In her deposition, Plaintiff failed to identify any conduct that Carnesi allegedly engaged in after his departure.  See id. at ¶ 171.  As such, all claims against Carnesi are untimely.

      Moreover, Plaintiff's claims against Carnesi are also based entirely on statements that Plaintiff's former supervisor, Ali, allegedly made about Carnesi.  See id.  Such hearsay and speculation is insufficient to allow a plaintiff to meet her burden, and is not entitled to be considered in opposition to a motion for summary judgment.  See Patterson v. Cty. of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Woods v. Newburgh Enlarged City Sch. Dist., 288 F. App'x

---

[8] This provision also requires that a plaintiff file a notice of claim.  See N.Y. Gen. Mun. Law § 50-i(1).  Defendants respectfully renew their argument that all actions in tort against the individual Defendants should be dismissed for failure to file a notice of claim.  Plaintiff has failed to allege any conduct that took place outside of the employment context and Plaintiff's claim the individual Defendants alleged actions were outside the *scope* of Defendants' employment is no more than an attempt to undercut the requirements of the General Municipal Law.  Under this interpretation, the notice of claim requirement could effectively be rendered moot by a plaintiff simply including an employee as a defendant and claiming that the purportedly illegal nature of the conduct alleged renders it outside the scope of employment.

757, 759 (2d Cir. 2008); <u>Weinstein v. Garden City Union Free Sch. Dist.</u>, CV 11-2509 (AKT),
2013 U.S. Dist. LEXIS 144066, at *83, 90 (E.D.N.Y. Sept. 30, 2013).

### 2.  D'Auria

Plaintiff's claims against D'Auria are based entirely on hearsay and speculation.
<u>See</u> Def. 56.1 Stmt. at ¶¶ 174-78.  Plaintiff has failed to produce admissible evidence that
D'Auria bore discriminatory animus toward her, engaged in discriminatory conduct, or defamed
Plaintiff in any way.  <u>See id.</u>  Accordingly, all claims against D'Auria should be dismissed.

### 3.  Dell'Olio

Plaintiff's claim against Dell'Olio is based on Dell'Olio's presence at a single
meeting with Plaintiff, where he allegedly "pressure[d] Plaintiff to sign a document releasing the
Agency from liability."  <u>See</u> Ex. A (2d Am. Compl.) at ¶ 87.  Once again, the documents
produced and Plaintiff's own admissions refute this allegation.  <u>See</u> Def. 56.1 Stmt. at ¶¶ 181-84.
Not only has Plaintiff failed to identify any actionable conduct taken by Dell'Olio, but she has
also failed to produce evidence to meet her burden to establish that he acted with discriminatory
or retaliatory animus.  Accordingly, Plaintiff's claims against Dell'Olio should be dismissed.

### 4.  Mateo and Krauss

Plaintiff admits that Mateo did not defame her.  <u>See</u> Def. 56.1 Stmt. at ¶ 187.

Plaintiff's claims against Mateo are based on an alleged "request[] that Plaintiff's
salary be decreased," and her claims against Mateo and Krauss are based on their alleged failure
to adequately respond to Plaintiff's complaints about Ali.  <u>See</u> Ex. A (2d Am. Compl.) at ¶¶ 50,
77.[9]  As an initial matter, the record reflects that Mateo did not try to reduce Plaintiff's salary,

---

[9] In her complaint, Plaintiff also accused Mateo of filing a DOI complaint against her.  <u>See</u> Ex. A
(2d Am. Compl.) at ¶ 78.  However, when asked about that complaint in her deposition, Plaintiff
failed to identify Mateo as involved in that act in any way.  <u>See</u> Ex. B (Pl. Dep.) at 307:22-24.

but simply sent an e-mail in July 2013 following up on a raise that was admittedly supposed to be temporary due to an increase in work following Hurricane Sandy.  See Def. 56.1 Stmt. at ¶¶ 37-41, 188-90.  Plaintiff admits that her salary was never reduced, and the record shows that Mateo repeatedly approved raises for Plaintiff.  See id. at ¶¶ 190-92.

Plaintiff has absolutely no basis to claim that the manner in which Mateo and Krauss responded to her allegations about Ali was discriminatory or retaliatory, nor has she produced any evidence that Krauss or Mateo were responsible for Plaintiff's purported loss of responsibilities in 2015.  Neither Mateo nor Krauss were the EEO officers tasked with investigating Plaintiff's allegations as part of SBS's internal EEO process.  See id. at ¶¶ 51-54. Nonetheless, in their respective roles as Executive Director for Human Resources and Chief of Staff, both met with Plaintiff repeatedly and took steps to address Plaintiff's complaints while an investigation was conducted by the SBS EEO office.  See id. at ¶¶ 193-212.

The record shows that Mateo responded and sought to meet with Plaintiff immediately after Mateo was copied on an e-mail in which Plaintiff claimed that Ali had made "untoward advances."  See id. at ¶ 194.  At Plaintiff's request, Plaintiff was kept in the same role, Ali was removed as Plaintiff's supervisor and was directed not to interact with her, Plaintiff's cubicle was moved away from Ali, and meetings were set up with other supervisors so that Plaintiff could explore other positions within the agency.  See id. at ¶198-212.  When Plaintiff complained that Mohamed was not comfortable supervising her, Krauss followed up on Plaintiff's claim and met with Mohamed.  See id. at ¶ 204.  When Plaintiff complained about losing access to Quickbooks software, Krauss and Mateo responded immediately and were informed that access had been restored less than four hours after Plaintiff first complained.  See id. at ¶ 206.  Nonetheless, Plaintiff claims that Mateo and Krauss should have done more and

complains about not getting precisely the accommodations she requested.  Not only were the requests that Plaintiff made impractical – such as Plaintiff's request to report to the First Deputy Commissioner – but Plaintiff cannot establish a right to them.  See id. at ¶ 201.  In sum, Plaintiff has failed to produce evidence of any action taken by Mateo or Krauss that could be considered actionable under the SHRL or CHRL.

Plaintiff has also failed to produce evidence that Mateo or Krauss acted with discriminatory or retaliatory intent.  While Plaintiff alleged in her complaint that Krauss said "'the entire Agency engaged in sexual discrimination,'" Plaintiff admitted during her deposition that Krauss never said these words.  See id. at ¶¶ 202-03.  Similarly, while Plaintiff claims that she recorded a conversation where Krauss allegedly admitted that sexual activity influenced promotions, Plaintiff failed to produce evidence supporting this alleged statement.  See id. at ¶¶ 207-08.  Notably, even if Plaintiff's patently false accusations could be believed, none of the statements that Plaintiff has attributed to Krauss at one time or another actually suggest that *Krauss* was motivated in any way by discriminatory or retaliatory animus.

### 5.  Shenton

Plaintiff claims that Shenton defamed her by making statements and threats suggesting that Plaintiff received raises and other favorable treatment due to having an affair with Ali.[10]  See Ex. A (2d Am. Compl.) at ¶ 62, 67.  However, these claims are once again based entirely on hearsay and Plaintiff has failed to produce admissible evidence supporting them.  See Def. 56.1 Stmt. at ¶¶ 214-16.

Plaintiff also claims that Shenton defamed her because Shenton was one of

---

[10] Notably, Plaintiff repeatedly engaged in the very same conduct that forms the core of her defamation claim throughout her deposition, identifying no less than five women whom she claims received their positions due to having sex with a SBS official while *admitting* that she does not have personal knowledge as to her accusations.  See Def. 56.1 Stmt. at ¶ 60.

several individuals whom she believes were responsible for filing a complaint concerning Plaintiff with the New York City Department of Investigation ("DOI").  See Ex. A (2d Am. Compl.) at ¶ 78, 247.  While a complaint was filed with DOI on December 30, 2014 – accusing Ali of falsifying Plaintiff's timesheets and giving Plaintiff raises without merit – this complaint was filed anonymously and dismissed after investigation.  See Def. 56.1 Stmt. at ¶¶ 177-79.  Plaintiff testified that she believes Shenton filed the anonymous DOI complaint because, in August and September 2014 respectively, Ali and Shenton allegedly told Plaintiff that Shenton intended to go to DOI and accuse Plaintiff and Ali of having an affair.  See id. at ¶¶ 215-17.  Not only is Ali's statement hearsay, but the DOI complaint at issue concerned conduct that largely took place after these alleged conversations and did not contain any allegation of an affair.  See id. at ¶ 177.  Moreover, it being beyond dispute that the DOI complaint was dismissed, Plaintiff has failed to identify any tangible injury.  As such, this claim also fails.

In purported support of her hostile work environment and discrimination claims, Plaintiff alleges that Shenton "menaced" Plaintiff and received some of Plaintiff's work.  Plaintiff's claim that Shenton was one of several women who "menaced" her by audibly stating "we will fuck her up" is both speculative and undercut by the fact that it was not included in any of Plaintiff's complaint, despite multiple opportunities to amend.  See Ex. A (2d Am. Compl.)  Instead, this allegation is based on Plaintiff's unsupported contention that she heard voices, one of which she *believes* belonged to Shenton, in a cubicle that did not belong to Shenton, allegedly discussing a woman who was not identified.  See Def. 56.1 Stmt. at ¶¶ 220-21.  Plaintiff's sole basis for believing that the voices were discussing her is a comment that Plaintiff allegedly made to Ali and which Plaintiff *assumes* Ali shared with the women she accuses.  See id. at ¶¶ 221-22.  Plaintiff's speculation and conjecture is insufficient to survive summary judgment.

- 24 -

Moreover, Plaintiff has failed to produce admissible evidence that Shenton acted with the intent necessary to be liable under any of Plaintiff's theories.  Plaintiff claims that she believes Shenton – who is of the same sex as Plaintiff – was acting due to Plaintiff's sex because Shenton allegedly "perpetrated the belief that [Plaintiff] was sleeping with [Ali] for raises."  See Ex. B (Pl. Dep.) at 271:13-15.  As discussed above, this argument is based on hearsay and assumptions.  Moreover, even if this argument were supported by admissible evidence, it is not actionable.  The protected characteristic at issue is sex, not perceived promiscuity, and Plaintiff has failed to produce evidence the Shenton treated Plaintiff differently because Plaintiff is a woman.  See Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 14-CV-6647 (JMF), 2015 U.S. Dist. LEXIS 100528, at *48 (S.D.N.Y. July 31, 2015) (dismissing a hostile work environment claim because "Plaintiff does not suggest — let alone plausibly — that any actions taken by her colleagues were on the basis of her sex or any other protected characteristic").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order granting Defendants' motion for partial summary judgment as outlined herein and granting such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              June 7, 2017

                          **ZACHARY W. CARTER**
                          Corporation Counsel of the
                            City of New York
                          Attorney for Defendants
                          100 Church Street, Room 2-112
                          New York, New York 10007
                          (212) 356-2452

                          By: _____/s/_____
                              Sean R. Renaghan
                              Assistant Corporation Counsel

- 25 -