USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
MICHELLE TULINO, :
:
                     Plaintiff, :    15-CV-7106 (JMF)
:
      -v- :    <u>OPINION AND ORDER</u>
:
THE CITY OF NEW YORK, et al., :
:
                    Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Michelle Tulino worked for the New York City Department of Small Business Services ("SBS") from 2008 to June 2015. During some of that time, she also served as Executive Director of the New York City Business Assistance Corporation ("NYBAC"), a not-for-profit organization that assists in making grants to small businesses. She now sues both entities and the City of New York, as well as her former supervisor at SBS and various coworkers, alleging discrimination, retaliation, and failure-to-pay-minimum-wage claims under a mix of federal, state, and City laws. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. In particular, they move for dismissal of Tulino's two federal claims, under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; her claims under the New York Labor Law ("NYLL"); and all of her claims against a handful of individual Defendants. (Docket No. 128; Docket No. 131 ("Defs.' Mem."), at 1-2, 5, 10, 12-13, 16-17). Tulino cross-moves for summary judgment on her equal pay and minimum-wage claims. (Docket No. 136; Docket No.

140 ("Pl.'s Mem."), at 5-6, 26, 29, 33). For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part and Tulino's motion is DENIED in its entirety.

## BACKGROUND

The Court described the relevant background in a prior Opinion granting in part and denying in part Defendants' motion to dismiss, *see Tulino v. City of New York*, 15-CV-7106 (JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016), familiarity with which is presumed. The following background facts, however, are taken from the Second Amended Complaint (Docket No. 76 ("SAC")) and admissible materials submitted in connection with the pending motions. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

SBS is a City agency "charged with helping to unlock economic potential and create economic security for all New Yorkers by creating stronger businesses, and building a fairer economy." (SAC ¶¶ 8, 25, 31). NYBAC shares space with SBS, but is a non-profit entity created by the City for the purpose of promoting economic development and opportunity in the City, primarily by collecting and processing grants for small businesses. (Docket No. 130 ("Defs.' 56.1"), at ¶¶ 32-35; SAC ¶ 47). Pursuant to its bylaws, NYBAC is wholly controlled by a board of directors comprised of employees of the City. (Docket No. 129 ("Renaghan Decl."), Ex. I ("NYBAC Bylaws"), § 1). Further, "[a]ny member who is an officer or employee of the City of New York or any agency of the City of New York shall serve as such in the furtherance of the interests of the City of New York." (*Id.*).

Tulino began working at SBS in or about 2007, first as an intern and later as a full-time employee. (SAC ¶ 31; Docket No. 142, Ex. 10 ("Jonas Report"), at 3). Between 2007 and 2015, she sought and accepted new positions within SBS on approximately four occasions and received raises on no fewer than five occasions. (Jonas Report 3-5; *see* Renaghan Decl., Ex. E).

Beginning in October 2012, Tulino held the title of Contract and Audit Manager in SBS's Financial Management and Administration Division. (SAC ¶ 44; Renaghan Decl., Ex. B ("Tulino Dep."), at 70). In or about the same year, Tulino's supervisor assigned her to work at NYBAC; two years later, she became Executive Director of NYBAC. (SAC ¶¶ 11, 47, 52). Tulino recorded her time at both SBS and NYBAC through the City's time-tracking system and was paid for all of her work in the same paycheck from the City. (Tulino Dep. 88-89; *see* Defs.' 56.1 ¶ 49). Her final salary was $75,000 per year. (Renaghan Decl., Ex. J).

Tulino left her employment with SBS and NYBAC in 2015. (Tulino Dep. 14). To the extent relevant here, she claims that she left after being subjected to sexually harassing and discriminatory behavior from her supervisor and retaliation for complaining about his behavior. (SAC ¶¶ 88-91). In addition to bringing claims about that alleged conduct, she alleges that she was paid less than men in SBS who were performing substantially equivalent work; that she was paid less then minimum wage for her work at NYBAC; and that she was denied at least three promotions on account of her sex. (SAC ¶¶ 31-145).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir.

4

1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

As noted, Defendants move for summary judgment with respect to only certain of Tulino's claims — namely, her claims under the EPA and its state analogue, New York Labor Law Section 194; under the FLSA and its state analogue, the Minimum Wage Act, NYLL §§ 650 *et seq.*; and against several individual Defendants (Anthony Dell'Olio, Sarah Krauss, Myrna Mateo, Bryana Shenton, Pat Dauria (also referred to as "D'Auria"), and Frank Carnesi). Tulino cross-moves for summary judgment on her equal pay and minimum-wage claims.

**A. Equal Pay Claims**

Each side moves first for summary judgment on Tulino's equal pay claims under the EPA and the NYLL. The EPA and NYLL prohibit employers from discriminating among employees on the basis of sex by paying different wages for equal work performed under similar working conditions. *See* 29 U.S.C. § 206(d)(1); NYLL § 194(1). To establish a *prima facie* claim under either law, "a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *EEOC v. Port Auth. Of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation marks omitted); *see Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 n.2 (2d Cir. 2015) (noting that the same standard applies under the NYLL). Significantly, however, the plaintiff "need not demonstrate that her job is identical to a higher paid position, but only must show that

5

the two positions are substantially equal in skill, effort, and responsibility." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks and citation omitted).

Here, Defendants make a strong case that Tulino fails to satisfy her burden — and, contrary to her suggestion at times (*see, e.g.*, Pl.'s Mem. 22), it is indeed *her* burden — of showing that her job and the jobs of the men to whom she compares herself were "substantially equal in skill, effort, and responsibility." *Lavin-McEleney*, 239 F.3d at 480. For one thing, the sole evidence she submits in support of that showing is her own testimony, in the form of her deposition and affidavits. For another, there are reasons to doubt that all of her testimony is even admissible — either on the ground that she lacks sufficiently specific personal knowledge of her comparators' actual jobs or on the ground that her affidavit contradicts her deposition testimony. *See, e.g.*, *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."). And finally, the Court is inclined to agree with Defendants' assertion that Tulino "unbelievably claims that every single comparator was failing to perform the job responsibilities reflected on his personnel documents, while at the same time claiming that she both performed both [*sic*] the functions listed on her personnel documents and numerous other alleged responsibilities — for which she provides no documentary support." (Docket No. 151 ("Defs.' Reply"), at 7).

Notwithstanding the force of these arguments, however, the Court cannot grant summary judgment to Defendants. "[T]he assessment of a witness's credibility is," of course, "a function reserved for the jury." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 n.4 (2d Cir. 2013) (per curiam); *see Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 206 (2d Cir. 2014) ("[A] district court may not discredit a witness's deposition testimony . . . because the assessment of a

witness's credibility is a function reserved for the jury." (internal quotation marks omitted)). And "[t]here is nothing" in Rule 56 "to suggest that nonmovants' affidavits alone cannot — as a matter of law — suffice to defend against a motion for summary judgment." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Finally, even disregarding the portions of Tulino's testimony that are arguably inadmissible (and they are not as numerous as Defendants suggest, given her longstanding tenure and role at SBS and NYBAC), there is enough for a reasonable jury to find in her favor on the question of substantial equality between her job and the job of at least one male comparator. It follows that Defendants are not entitled to summary judgment. *See, e.g.*, *Jamilik v. Yale Univ.*, 362 F. App'x 148, 150 (2d Cir. 2009) (finding "inappropriate" a summary judgment ruling against a plaintiff whose equal pay claim was grounded in a single comparator); *Lavin-McEleney*, 239 F.3d at 481 (finding that the plaintiff successfully stated an Equal Pay Act claim by identifying a single comparator and providing statistical evidence of gender-based discrimination). Nor is Tulino entitled to summary judgment, as the Court certainly cannot conclude that a reasonable jury would have to rule in her favor. Accordingly, both motions must be and are denied with respect to Tulino's equal pay claims.

**B. Minimum-Wage Claims**

Both sides also move for summary judgment with respect to Tulino's minimum-wage claims under the FLSA and NYLL. Significantly, both sides agree that the viability of Tulino's minimum wage claims turns on whether NYBAC and SBS (or NYBAC and the City, more precisely) constitute her "joint employers" under the FLSA and NYLL. (*See* Docket No. 155 ("Pl.'s Reply"), at 10 (conceding that Tulino's minimum-wage claims are viable only "to the extent NYBAC and SBS are not joint employers"); *see also* Defs.' Reply12-16). If they do, then the salary Tulino received from the City exceeded the minimum wage; if they do not, then she

7

may well have a valid mimimum-wage claim with respect to the hours she worked at NYBAC. *See* 29 C.F.R. § 791.2(a) ("[I]f the facts establish that the employee is employed jointly by two or more employers . . . *each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.*" (emphasis added)).

Defendants plainly have the better of the argument on these claims. Indeed, Tulino effectively concedes as much by lumping her responsibilities at SBS and NYBAC together for purposes of her equal pay claims. That is, in comparing her work to the work of male employees at SBS, she repeatedly invokes not only her responsibilities and title at SBS, but also her responsibilities and title at NYBAC. (*See* Pl.'s Mem. 10-11 (listing her NYBAC role and responsibilities alongside her SBS role and responsibilities)). As a matter of common sense, that argument presumes that SBS and NYBAC are one and the same or, at a minimum, joint employers. Even more significantly, Tulino *explicitly* conceded the point in her deposition. When asked if she had "any other roles" or "responsibilities within the financial management unit" of SBS, she answered "yes" and then described her role at NYBAC, which she herself identified as "an independent organization *that SBS runs*." (Tulino Dep. 79 (emphasis added)). And when asked if she used the same time-keeping system to track all of her work "for the City of New York" — that is, her work at *both* SBS and NYBAC — Tulino answered yes. (*Id.* at 88-89). These concessions alone are enough to conclude that SBS and NYBAC qualified as Tulino's joint employers and, thus, that she was paid more than a minimum wage.

In any event, even without Tulino's concessions, no reasonable jury could find for her on the question of joint employment. "Horizontal joint employment" — the species of joint employment at issue here — exists under the FLSA and NYLL "when 'two (or more) employers

8

each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee.'" *Murphy v. Heartshare Human Servs. of N.Y.*, 254 F. Supp. 3d 392, 397 (E.D.N.Y. 2017) (Weinstein, J.) (quoting Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div. ("2016 DOL Op."), 2016 WL 284582, at *4 (Jan. 20, 2016)); *see also Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091 (ER), 2013 WL 749497, at *6 n.3 (S.D.N.Y. Feb. 28, 2013) ("Courts in this Circuit hold that the New York Labor Law embodies the same standards for joint employment as the FLSA." (internal quotation marks omitted)). Regulations issued by the Department of Labor ("DOL") provide that whether employment by two employers "is to be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a). If the facts "establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee . . . , each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act." *Id.* But "if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." *Id.*; *see Murphy*, 254 F. Supp. 3d at 397-99.

The DOL has provided further guidance on the fact-intensive joint employer inquiry in both regulations and opinion letters.[1] By regulation, DOL has explained as follows:

---

[1] As the Second Circuit has noted, "[s]tatutory interpretations contained in DOL opinion letters, as opposed to those arrived at after formal agency adjudication or notice-and-comment rulemaking, are not binding authority. . . . Nevertheless, such agency letters represent a body of experience and informed judgment to which courts and litigants may properly resort for

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> > (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> > (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> > (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). And in opinion letters, the DOL has identified various factors that "may be relevant when analyzing the degree of association between, and sharing of control by, potential horizontal joint employers." 2016 DOL Op., 2016 WL 284582, at *6. They include: "whether there are common officers or directors of the companies; the nature of the common management support provided; whether employees have priority for vacancies at the other companies; whether there are any common insurance, pension or payroll systems; and whether there are any common hiring seniority, recordkeeping or billing systems." Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div. ("2005 DOL Op."), 2005 WL 6219105, at *2 (June 14, 2005); *see* 2016 DOL Op., 2016 WL 284582, at *7 (identifying additional factors); *see also Murphy*, 254 F. Supp. 3d at 398-99 (discussing the DOL factors). These factors "can help determine if there is sufficient indication that the potential joint employers are associated with respect to the employee and thus share control of the employee." 2016 DOL Op., 2016 WL 284582, at *7.

---

guidance." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 149 (2d Cir. 2008) (internal quotation marks and citations omitted).

Considering the undisputed facts in light of those factors, the Court is compelled to conclude that NYBAC and SBS (or the City) jointly employed Tulino. First, under NYBAC's bylaws, the corporation's membership includes at least three New York City officials serving *ex officio*, and the corporation's five-member board is to be comprised of "officers or employees of the City of New York Office for Economic Development," serving "in furtherance of the interests of the City of New York." (NYBAC Bylaws § 1). The bylaws further provide that "[a]ny member who is an officer or employee of the City of New York or any agency of the City of New York," as Tulino was, "shall serve as such in the furtherance of the interests of the City of New York." (*Id.*). Second, Tulino used City offices and equipment to perform her work for NYBAC, used the City's time-keeping system to track her work for both SBS and NYBAC, and received additional pay for her NYBAC work in her City paycheck. (Tulino Dep. at 88-89; *see* Defs.' 56.1 ¶ 49). Third, Tulino was assigned to work at NYBAC by, and reported in connection with that work to, Defendant Shaazad Ali, her supervisor at SBS. (Tulino Dep. 83-84). Fourth, when requesting a raise for Tulino in 2014, Ali noted that she would be serving as Executive Director of NYBAC as an "additional responsibilit[y]" and "recommend[ed] that she receive $5,000 annually to be paid from NYBAC." (Renaghan Decl., Ex. J). And finally, "NYBAC is housed at the same address" as SBS. (SAC ¶ 47). Considering these facts together, no reasonable jury could possibly find that Tulino's employment with NYBAC was "completely disassociated from" her employment with SBS. 29 C.F.R. § 791.2(a).

In sum, the record compels the conclusion that NYBAC and SBS (or the City) jointly employed Tulino. As Tulino concedes, that conclusion dooms her minimum-wage claims. (*See* Pl.'s Reply 10). Accordingly, those claims — under both the FLSA and NYLL — are dismissed.

**C. Other Claims**

Finally, Defendants move for summary judgment with respect to Tulino's failure-to-promote claims under state and City law and all of her claims against Defendants Dell'Olio, Krauss, Mateo, Shenton, Dauria, and Carnesi. (Defs.' Mem. 16-25). In her opposition, Tulino addresses only her failure-to-promote claims and her claim that Dell'Olio, Krauss, and Mateo aided and abetted retaliation by SBS. (Pl.'s Mem. 33-35). She explicitly consents to dismissal of her claims against Carnesi, D'Auria, and Shenton. (Pl.'s Mem. 5). And she fails to respond to Defendants' arguments with respect to dismissal of her other claims against Dell'Olio, Krauss, and Mateo, including her claims of discrimination and hostile work environment claims under state and City law, quid pro quo sexual harassment under state law, and defamation. (Defs.' Mem. 16-25). Accordingly, all of those claims are dismissed. *See, e.g.*, *Jackson v. Federal Exp.*, 766 F.3d 189, 194-95 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims"); *see also, e.g.*, *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citing cases) (internal quotation marks omitted)).[2]

In any event, the claims that Tulino does defend fail as a matter of law as well. To establish a claim for failure to promote, Tulino must show that "1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she applied for and was denied

---

[2] Defendants rightly take Tulino to task for "belated[ly]" dropping her claims against Carnesi, D'Auria, and Shenton, as the fatal flaw in her claims against Carnesi (namely, that he left SBS long before the events are issue) was flagged at the motion-to-dismiss stage and defense counsel contacted Tulino's counsel in advance of filing Defendants' motion in an effort to narrow the issues in dispute. (Defs.' Reply 22-23).

promotion to a position for which she was qualified; and 4) the position remained open and the employer continued to seek applicants." *Tulino*, 2016 WL 2967847, at *5 (internal quotation marks omitted). A plaintiff need not show that she applied for a specific position, however, if "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226-27 (2d Cir. 2004); *accord Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). But that exception is a narrow one. *See Petrosino*, 385 F.3d at 227. Among other things, because "one of the key purposes of [this] requirement is to protect employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply," expressing only "a general interest in promotion . . . is not enough to excuse her from the specific-application requirement." *Tulino*, 2016 WL 2967847, at *6 (internal quotation marks omitted).

Applying those standards here, Tulino's failure-to-promote claims fail for several independent reasons. First, even assuming that the three vacancies at issue were not posted, Tulino does not produce evidence that she was unaware of them before they were filled or that she attempted to apply for them through informal procedures endorsed by the SBS. At most, she allegedly expressed a generalized desire that she to be promoted to an Executive Director or Assistant Commissioner position. (SAC ¶ 141; Docket No. 137, ¶¶ 33, 38). She does not allege that she expressed any interest in working in the Neighborhood Development Division where the opportunities existed. Second, Tulino does not establish that she was qualified for the positions, let alone that she was more qualified than the men who received them — two of whom were promoted from within the Division itself and came to the jobs with both managerial experience

13

and higher degrees that Tulino lacked. (Defs.' 56.1 ¶¶ 2-42, 86-95; *see* Pl's Mem. 11-12, 18-19).[3] At a minimum, Tulino cannot establish that her credentials were "so superior to the credentials of" those "selected for the job[s] that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted), *superseded in part and on other grounds by* Fed. R. Civ. P. 37(e). Finally, and related, Tulino points to no evidence whatsoever that the relevant decision makers — most notably, Elizabeth DeLeon, the Deputy Commissioner of the Neighborhood Development Division — were motivated by discriminatory animus. In the absence of such evidence, it is not this Court's role to second guess Defendants' business decisions. *See id.*

Finally, Tulino's claims that Dell'Olio, Krauss, and Mateo aided and abetted unlawful retaliation are plainly meritless. Under state and City law, a defendant can be held liable for aiding and abetting discriminatory and retaliatory conduct, *see* N.Y. Exec. Law § 296(6) & (7); N.Y.C. Admin. Code § 8-107(6), so long as he or she "actually participate[d] in the conduct giving rise to a . . . claim," *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal quotation marks and citation omitted); *accord Patrick v. Adjusters Int'l, Inc.*, No. 16-CV-2789 (WFK) (PK), 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017). Significantly, however, "[a]iding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there

---

[3] The third — Will Choi — was not really "promoted" in the sense that he was given a higher-ranking job. Instead, Tulino alleges that Defendants gave him a raise and a loftier title "without assigning him any additional duties" — that is, that he received more of a "promotion in rank" than a promotion to "a particular position." (Pl.'s Mem. 32-33). That allegation may provide fodder for Tulino's equal-pay claims (although Defendants argue that Choi's raise was amply justified for non-discriminatory reasons (Defs.' Mem. 8; Defs.' 56.1 ¶¶ 115-16)), but Tulino cites no authority for the proposition that it could support a failure-to-promote claim.

is no community of purpose. Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Fried v. LVI Servs., Inc.*, No. 10-CV-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) (internal quotation marks omitted); *accord George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 451 (S.D.N.Y. 2016). Here, Tulino alleges only that Dell'Olio "pressured" her to "sign off on an incomplete and toned-down summary" of a complaint she had made about Ali and that Krauss and Mateo were "part of SBS's sham investigation" of her complaints. (Pl.'s Mem. 34-35). But she makes no claim, and certainly points to no evidence, that they shared a retaliatory "intent or purpose." *Fried*, 2011 WL 2119748, at *7. That is fatal to her claims. *See, e.g.*, *Patrick*, 2017 WL 6521251, at *6 (granting a motion to dismiss aiding-and-abetting claims where the defendants at issue were "alleged to have, *inter alia*, spoken with Plaintiff and [the company's] supervisory staff on many occasions about Plaintiff's allegations, discouraged Plaintiff from filing a formal complaint against [her alleged harasser] during one such discussion . . . , acknowledged that [the alleged harasser's] treatment of her was likely gender based but that they were reluctant to terminate him over his conduct, and instigated an investigation into [her alleged harasser's] behavior, albeit one Plaintiff found to be delayed and inadequate").

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part and Tulino's cross-motion for summary judgment is denied. Specifically, Tulino's minimum-wage claims under the FLSA and the NYLL, her failure-to-promote claims under state and City law, and all of her claims against Dell'Olio, Krauss, Mateo, Shenton, Dauria, and Carnesi are dismissed. By contrast, her equal pay claims (and the claims as to which Defendants did not move for summary judgment) survive for trial.

Per the Case Management Plan and Scheduling Order (Docket No. 82), within thirty days of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Rule 26(a)(3) of the Federal Rules of Civil Procedure. The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*. If this action is to be tried before a jury, the parties shall also file joint requests to charge, joint proposed verdict forms, and joint proposed voir dire questions on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Rule 51(a)(2)(A) of the Federal Rules of Civil Procedure. If this action is to be tried to the Court, the parties shall file proposed findings of fact and conclusions of law on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.

Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed. Finally, if the parties are interested in an additional settlement conference before Magistrate Judge Netburn, they shall so advise the Court by joint letter as soon as possible.

The Clerk of Court is directed to terminate Dell'Olio, Krauss, Mateo, Shenton, Dauria, and Carnesi as Defendants and to terminate Docket Nos. 128 and 136.

SO ORDERED.

Date: March 27, 2018
      New York, New York

JESSE M. FURMAN
United States District Judge