UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----------------------------------
MICHELLE TULINO,

      Plaintiff,

  -against-

SHAAZAD ALI and THE CITY OF
NEW YORK,

      Defendants.
----------------------------------

15-cv-7106 (JSR)

MEMORANDUM

JED S. RAKOFF, U.S.D.J.

    In this trial alleging sexual harassment, defendants moved for judgment as a matter of law on certain issues at the close of the plaintiff's evidence. The Court denied defendants' motions to dismiss plaintiff's claims for hostile work environment and retaliation, but granted the motion to dismiss the claim for constructive discharge.[1] Additionally, the Court struck plaintiff's claim for backpay, finding that, in the absence of a constructive discharge, there was no basis for such damages. This Memorandum briefly explains the reasons for these rulings.

    The parties' familiarity with the procedural history and factual background of this case is assumed. As relevant here,

---

[1] All of plaintiff's claims arise under New York State - more specifically, New York City - law. This is because plaintiff, literally on the eve of trial, dismissed her federal claims. Under these circumstances, it would have been unreasonable and unfair, both to the defendants and to the Court, for the Court not to exercise supplemental jurisdiction and go forward with the trial of the state claims.

1

plaintiff Michelle Tulino worked for the City of New York in the Department of Small Business Services ("SBS") for several years before resigning in 2014. In 2015, she sued, alleging (among other causes of action, many of which were previously dismissed by the Court and others of which she subsequently withdrew) hostile work environment, retaliation, and constructive discharge by the City and her former supervisor, Shaazad Ali.

Plaintiff's credibility was very much in issue at trial, but for purposes of defendants' motion, the Court construes the evidence in the light most favorable to plaintiff. On this view, plaintiff's evidence at trial, if fully credited by the jury, would support the following factual findings. Shortly after Tulino's employment with the City began in 2009, Ali (who was not yet her direct supervisor, but was in a supervisory position), some 30 years her senior, struck up an inappropriately close friendship with her. Ali would discuss with Tulino explicit rumors of sexual activity occurring in the workplace, something he concededly did not do with other employees. Ali repeatedly invited Tulino out for social events, such as movies or lunch dates, and if she did not respond quickly or enthusiastically enough, he would follow up with passive-aggressive emails. Ali also exercised excessive control over Tulino's schedule; on days when she was working in the field, he would repeatedly email and call her, demanding to know why she was not in the office.

Taking the evidence most favorably to plaintiff, the jury could also find that Ali took steps to isolate Tulino and make her dependent upon him. Tulino testified that Ali told her that female employees at SBS were expected to engage in sexual activity to advance professionally. Ali told Tulino that she could avoid doing this, but only with his help, and he conveyed to her that he was responsible for all of her promotions and raises. Ali also told Tulino that other employees thought poorly of her – for example, he told her that another supervisor had compared her to a prior employee who was rumored to have engaged in sex for better treatment, a comparison Tulino understood to mean that she was promiscuous.

Tulino eventually told Ali that his behavior was unwelcome and unprofessional. He apologized, but kept sending the same kinds of emails previously complained of. After becoming Tulino's supervisor, Ali moved her workspace to a cubicle right outside of his own office. He also became jealous of her friendship with another male employee. In September of 2014, and then again in November of that year, Ali grabbed Tulino without her consent while at work, and the second time he tried to kiss her.

Following the unwanted contact in November of 2014, Tulino told Ali she would be filing an EEO complaint. Immediately afterwards, Ali informed her she was being transferred to another supervisor and that she would have to surrender her work

3

Blackberry. Tulino complained that this was retaliatory, and the City's EEO office opened an investigation into Ali. The investigation interviewed some, but not all, of the witnesses Tulino provided, and ultimately concluded that the allegations were unfounded. During this time, Tulino's workload was reduced, although her salary remained the same. Ultimately, Tulino resigned.

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P 50(a)(1). Under that standard, plaintiff's evidence is sufficient to put the claim of hostile work environment to the jury. The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, which prohibits sex discrimination in employment, is "broader and more remedial" than its federal or statewide counterparts. Williams v. New York City Hous. Auth., 61 A.D.3d 62, 76 (1st Dep't 2009). Accordingly, liability for creating a hostile work environment exists under that law whenever the "existence of differential treatment" is shown, even if not sufficiently severe or pervasive to create federal liability. Id. Plaintiff's evidence, if fully credited by the jury, comfortably satisfies that standard.

4

Although a closer question, plaintiff's claim of retaliation also survives, as the jury could reasonably find that the City retaliated against Tulino for engaging in protected activity. The City Human Rights Law provides that an employer may not "retaliate" against an employee because the employee has "opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). Filing a formal complaint is not necessary. Tulino's complaints to Ali himself about his conduct could constitute "opposition to discrimination" within the meaning of this provision. See Mihalik v. Credit Agricole Cheuvreux N.A., Inc., 715 F.3d 102, 115 (2d Cir. 2013) (reversing grant of summary judgment on issue of retaliation because, "by implicitly referencing her rejection of his sexual propositions," employee "may have opposed his discrimination"). Similarly, the employer's retaliatory act "need not result . . . in a materially adverse change in the terms and conditions of employment," so long as the acts are "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7). A jury could reasonably find that, by refusing to give Tulino the kind of desirable work assignments she had previously received, the City engaged in such deterrence. Finally, although the evidence is slim that these acts were taken in order to deliberately retaliate against Tulino, New York City law permits an inference of retaliatory intent when the complained-of acts occur "a short time" after the employee manifests

opposition to discrimination. Teran v. JetBlue Airways Corp. 132 A.D.3d 493, 494 (1st Dep't 2015). Thus, both the hostile work environment and retaliation claims survive.

The Court reaches a different result, however, as to the claim for constructive discharge, which is governed by a "stricter standard." La Porta v. Alacra, Inc., 142 A.D.3d 851, 852 (1st Dep't 2016). Defendants contend that the standard for constructive discharge under the City Human Rights Law mirrors the federal standard. Plaintiff, however, accurately notes that the First Department "has not yet ruled as to the contours of a City HRL constructive discharge claim," and has cautioned that "it should not be assumed that the standards . . . are the same as have been set forth for title VII." Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 116 A.D.3d 134, 138 n.1 (1st Dep't 2014). The Court finds it unnecessary to resolve this question, however, as the evidence in this case falls short of any standard articulated by New York caselaw.

To prevail on a claim of constructive discharge, the plaintiff must prove that the employer "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." Short v. Deutsche Bank Securities, Inc., 79 A.D.3d 503, 504 (1st Dep't 2010) (quoting Mascola v. City Univ. of N.Y., 14 A.D.3d 309, 410 (1st Dep't 2005)). A reasonable jury could not conclude that either the

6

allegedly inadequate EEO investigation or the reduction in Tulino's work assignments made work so intolerable that a reasonable person would have no choice but to resign. See La Porta, 142 A.D.3d at 852 (allegations that plaintiff was sexually harassed, that employer deliberately failed to take action, and that plaintiff feared further harassment, while sufficient to state claims for hostile work environment and retaliation, were insufficient for constructive discharge); Short, 79 A.D.3d at 504 (fact that plaintiff's work was reassigned and her bonus reduced did not establish constructive discharge). Nor, in the Court's view, is there sufficient evidence for a reasonable jury to conclude that the City was deliberately attempting to force Tulino to quit.

Plaintiff contends that La Porta and Short inappropriately rely on precedent predating substantive amendments to the City HRL and, thus, were wrongly decided. But it is not this Court's place to second-guess pronouncements of state law by a state court, unless contradicted by a more authoritative source of that law. Plaintiff has not pointed to any decisions of the New York Court of Appeals or any Department of the Appellate Division that suggest plaintiff's evidence here would establish constructive discharge. Accordingly, the Court will not submit that claim to the jury.

Finally, as previously noted, the Court determined that plaintiff is not entitled to economic damages in the absence of a

7

constructive discharge. Plaintiff, relying on E.E.O.C. v. Bloomberg L.P., 29 F. Supp. 3d 334, 341 (S.D.N.Y. 2014), contends that backpay should be an available remedy even where the plaintiff voluntarily resigned in response to discrimination. The Court disagrees. The Bloomberg Court, after noting that the availability of backpay under federal law in the absence of a constructive discharge is an open question in the Second Circuit, held that it would be inappropriate to categorically bar such damages under the City HRL. Id. at 341-42. Rather, the Court found that the proper safeguard would be case-by-case application of the plaintiff's duty to mitigate damages, which "will often require [the employee] to stay with her discriminatory employer." Id. at 342.

The Court finds no fault in the well-reasoned Bloomberg opinion, but it does not help plaintiff. Courts that have allowed backpay in the absence of constructive discharge have done so in the "limited circumstances" where an employee, as a result of discrimination, is denied a special or unique position, such that staying in their existing employment would not alleviate the harm or serve any purpose. Id. at 342-43. That circumstance is not present in this case. For much the same reason that no reasonable jury could find that Tulino was constructively discharged, no reasonable jury could conclude that she was excused from the obligation to mitigate her damages by staying in her old job. Accordingly, whether the law categorically bars backpay in such

8

circumstances or requires case-by-case analysis is immaterial; either way, there is no basis for the jury to award backpay here.

Thus, plaintiff's claims for hostile work environment and retaliation will be submitted to the jury. The Court will enter judgment as a matter of law in favor of defendants on plaintiff's claim for constructive discharge. Finally, there being no basis for an award of economic damages, the Court will not instruct the jury on such damages.

SO ORDERED.

Dated: New York, NY

February 27, 2019

JED S. RAKOFF, U.S.D.J.