19-2679
*Tulino v. The City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty.

Present:  RICHARD C. WESLEY,
          DEBRA ANN LIVINGSTON,
          STEVEN J. MENASHI
                *Circuit Judges*,

_____

MICHELLE TULINO,

        *Plaintiff-Appellant*,

    v.                                                                              19-2679

THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF SMALL BUSINESS SERVICES, NEW YORK CITY BUSINESS ASSISTANCE CORPORATION, SHAAZAD ALI, ISMAIL MOHAMED, ROBERT WALSH, ANDREW SCHWARTZ, ANTHONY DELL'OLIO, SARAH KRAUSS, GRETA ARENAS, NARDA AMARILLA-FERNANDEZ, BRYANA SHENTON, MYRNA MATEO, PAT DAURIA, AND FRANK CARNESI,

        *Defendants-Appellees*.
_____

For Plaintiff-Appellant:           STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, New Paltz, NY

For Defendants-Appellees:          SUSAN PAULSON, of Counsel, (Richard Dearing, Devin

1

Slack, of Counsel, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Michelle Tulino appeals from a February 27, 2019 decision by the United States District Court for the Southern District of New York (Rakoff, *J.*) granting judgment as a matter of law to the Defendants-Appellees and dismissing Tulino's constructive discharge claim under the New York City Human Rights Law ("NYCHRL"). From 2007 to 2015, Tulino worked for the City of New York in a variety of positions principally within the Department of Small Business Services ("SBS"). Tulino left her job in 2015 after complaining of gender-based harassment by her supervisor, Shaazad Ali, and she brought suit against the Defendants-Appellees asserting a variety of claims, four of which (hostile work environment, retaliation, and constructive discharge, all pursuant to the NYCHRL, as well as common-law battery) proceeded to trial. At the close of Tulino's case at trial, the district court granted judgment as a matter of law to the Defendants-Appellees on Tulino's constructive discharge claim while allowing her other claims to proceed. The jury then found for Tulino on her hostile work environment and retaliation claims.[1] The district court subsequently denied Tulino's motion for reconsideration of its constructive discharge ruling and Tulino timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

---

[1] The district court subsequently granted the defense's motion for remittitur and reduced the damages awarded by the jury to $1.25 million.

2

**DISCUSSION**

We review a motion granting judgment as a matter of law *de novo*. *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004). In reviewing a district court's ruling on a motion for judgment as a matter of law, "we apply the same standard that is required of the district court." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007). "We consider the evidence in the light most favorable to the party against whom the motion was made and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d Cir. 2014) (alteration in original) (citation and internal quotation marks omitted). On appeal, Tulino argues that the standard for constructive discharge under the New York City Human Rights Law is unclear and, consequently, we should certify this case to the Court of Appeals for clarification as to the proper standard. We disagree that certification is appropriate, concluding that under any standard proposed by Tulino, the facts of this case are insufficient to state a constructive discharge claim.[2]

---

[2] To be clear, New York courts *have* expressed the view, as Tulino asserts, that the proper standard for constructive discharge claims under the amended NYCHRL has not been fully articulated. *See, e.g., Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP,* 981 N.Y.S.2d 89, 92 n.1 (1st Dep't 2014) (noting that "[t]his court has not yet ruled as to the contours of a City HRL constructive discharge claim using enhanced liberal construction analysis required by the New York City Local Civil Rights Restoration Act of 2005 . . . [a]s such, it should not be assumed that the standards for establishing constructive discharge under the City HRL are the same as have been set forth for Title VII, either in respect to the degree of difficulty or unpleasantness of working conditions required to make out the claim or otherwise"). In 2019, however, the First Department decided *Crookendale v. New York City Health & Hospitals Corporation*, 107 N.Y.S.3d 282 (1st Dep't 2019). In *Crookendale*, the First Department stated that the standard for constructive discharge under the NYCHRL is whether the defendant "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." *Id*. at 283 (quoting *Short v. Deutsche Bank Sec., Inc.*, 913 N.Y.S.2d 64, 66 (1st Dep't 2010)). In so stating, the court appeared to confirm that the standard remains unchanged under the amended NYCHRL and that it mirrors the federal standard, *see, e.g.*, *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (stating that "[t]he constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a *reasonable person in the employee's position would have felt compelled to resign*" (emphasis added) (citation and internal quotation marks omitted)). But despite this holding, the Second Department has since stated, even after *Crookendale*, that the New York appellate

3

On appeal Tulino acknowledges that any standard for constructive discharge relevant to this case will require deliberate actions taken by the employer sufficient to cause a reasonable person to feel compelled to resign. But here, the circumstances of Tulino's employment were not such that a reasonable person would have felt compelled to resign. After complaining of Ali's harassment, Tulino received scheduled raises, *see* JA 931, and remained at her job in her current title, *see* JA 931. Moreover, Tulino's complaints resulted in the commencement of an EEO investigation, JA 933, and it is undisputed that the department assigned Tulino to a different supervisor, JA 704, and offered her employment in at least one other position where she would not be supervised by Ali, JA 790. Though Tulino complains that her work assignments were reduced, that is typically not considered enough to compel a reasonable person to resign. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 231 (2d Cir. 2004) (noting that "the law is clear that a constructive discharge claim cannot be proved by demonstrating that an employee is dissatisfied with the work assignments she receives within her job title" and that a reduction in responsibilities would not "support [an employee's] constructive discharge claim").[3]

---

courts have not yet conducted the proper liberal construction inquiry to determine the constructive discharge standard under the NYCHRL. *Golston-Green v. City of New York*, -- N.Y.S.3d --, No. 2016–02462, 2020 WL 2462411, at *9 (2d. Dep't May 13, 2020). Because we conclude that Tulino's constructive discharge claim fails under any standard she proposes here, we need not reach or decide the question of the proper standard for constructive discharge under the NYCHRL.

[3] Tulino argues that *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003), supports her claim, but the *Terry* plaintiff was subjected to significantly more serious conduct calculated as to make him "so miserable he would quit." *Id.* at 152 (noting that plaintiff was, *inter alia*, denied promotions, isolated from co-workers, transferred to a different office without warning, and was threatened with "be[ing] brought up on more charges"). The same is true regarding the other precedent on which Tulino relies. *See, e.g.*, *Teran v. JetBlue Airways Corp.*, 18 N.Y.S.3d 25, 26 (1st Dep't 2015) (noting that the only alternative positions offered to plaintiff to avoid contact with seriously abusive supervisor came with a steep pay cut); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 358, 367–68 (2d Cir. 2001) (recounting abuse occurring "every day for 2 ½ years" with escalating severity such that the plaintiff experienced a psychological breakdown in advance of resignation).

4

While there is evidence that two SBS employees stated that Tulino had "offended the agency" and that she had "no place here" if she did not return to Ali's division, JA 227, these remarks, in the context, *inter alia*, of the offers of employment in other departments, the lack of any active disciplinary investigations against Tulino, her civil service protections, and her transfer to a different supervisor, provide no basis on which a jury might reasonably conclude that the Defendants-Appellees undertook deliberate actions sufficient to compel resignation. *See Petrosino*, 385 F.3d at 231 (finding no constructive discharge claim where a transfer would not have diminished the plaintiff's "job title, pay, or seniority" and "[a]t most . . . would have delayed [the plaintiff's] opportunity to be promoted to a managerial position"). Nor is our recent decision in *Green v. Town of New Haven*, 952 F.3d 394, 407 (2d Cir. 2020), to the contrary.[4]

Tulino argues that the measures taken to address her complaints and any job security she might have enjoyed were illusory, since false accusations could have been fabricated to terminate her employment. But evidence indicates that the allegations made against Tulino were properly disregarded, JA 197–98, 233–34, and there is no evidence that further false accusations would have had any likelihood of success. The same is true for Tulino's argument that the offer of transfer to other positions was made in bad faith. The evidence indicates that while Tulino did not want to leave her position (and could not be fired due to civil service protections), JA 303, 339, Tulino actually was offered at least one other position, JA 790. Given these circumstances, the district court was correct to grant judgment as a matter of law against Tulino on her constructive discharge claim.

---

[4] In *Green*, we noted that "neither an absolute statement nor a direct communication by an ultimate decisionmaker" of a "termination threat or prediction" is *required* for a constructive discharge claim, but did not hold that the arguable presence of a threat automatically makes out such a claim. *Id.* at 406–07.

5

* * *

We have considered Tulino's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6